628 A.2d 223

T.H.E. INSURANCE COMPANY

v.

P.T.P. INCORPORATED et al.

No. 120, Sept. Term, 1992.

Court of Appeals of Maryland.

July 29, 1993.

R. Wayne Pierce, Niles, Barton & Wilmer, Baltimore, on brief, for appellant.

David E. Manoogian, Epstein, Becker & Green, and Jean M. Jones, on brief, Washington, DC, for amicus curiae Ohio Hosp. Ins. Co.

David M. Funk, Richard A. Froehlinger, III, of Shapiro and Olander, on brief, Baltimore, for amicus curiae Medical Mut. Liability Ins. Soc. of MD.

Donald C. Allen, Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, on brief, Baltimore, for amicus curiae Scottsdale Ins. Co.

E. Dale Adkins, III, Anderson, Coe & King, on brief, Baltimore, Joseph F. Cunningham, Joseph F. Cunningham & Associates, Washington, DC, on brief, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

RODOWSKY, Judge.

This case involves the effect of the notice-prejudice provisions of Md.Code (1957, 1991 Repl.Vol.), Art. 48A, § 482, on an insurer's denial of coverage under a claims made liability insurance policy for a claim made and reported after the policy had expired. It is the issue that we did not reach in *St. Paul*

*Fire & Marine Ins. Co. v. House,* 315 Md. 328, 554 A.2d 404 (1989), but which the dissenting judges in *House* would have reached. In deciding the issue in this case we apply, in substance, the analysis presented in Chief Judge Murphy's dissent in *House.* Under that analysis § 482 does not produce coverage in this case.

One of the three appellees, P.T.P. Incorporated (P.T.P.), operated a go-kart track near Ocean City, Maryland. On August 27, 1987, nine year old Lisa Buckley (Buckley) was injured at P.T.P.'s track when the go-kart in which she was riding with her uncle struck a barrier. Buckley was ministered to by her mother at the scene and left the premises with her, without receiving any other medical attention.

At that time P.T.P. was insured under a comprehensive general liability policy issued in April 1987 by the appellant, T.H.E. Insurance Company (T.H.E.). The policy was the first one issued to P.T.P. by T.H.E. P.T.P. purchased the policy through Atlantic Insurance Associates (Atlantic), whose president is Alfred Melson (Melson). Both are appellees. At the time of Buckley's accident, P.T.P. did not report the occurrence to T.H.E., Atlantic, or Melson.

The policy acquired by P.T.P. from T.H.E. was written on a claims made basis. The policy period was from April 2, 1987, to April 2, 1988, with a retroactive date of April 2, 1987.[1] In the following year T.H.E. issued to P.T.P. a comprehensive general liability "renewal" policy for the period May 27, 1988, to May 27, 1989, with a retroactive date of May 27, 1988.

On June 6, 1988, counsel for Buckley, by letter, made a claim for damages against P.T.P. based on the accident of August 27, 1987. This claim letter was sent some nine months after the accident and more than sixty days after the policy period that ended April 2, 1988. P.T.P. informed Atlantic of the claim, and Atlantic mailed notice of the claim to T.H.E. The insurer's response of June 23, 1988, stated that the claim

---

1. Injuries occurring before the retroactive date are not covered by the policy.

was received on June 20, 1988. In that response T.H.E. denied coverage for the Buckley claim.

Thereafter, Buckley sued P.T.P. and others in an action that ultimately was transferred to the United States District Court for the District of Maryland. T.H.E. did not defend.

On April 18, 1990, P.T.P. filed in the Circuit Court for Worcester County a complaint for declaratory judgment and damages against T.H.E., Atlantic, and Melson. P.T.P. sought a judgment declaring that under either the initial or renewal policy T.H.E. provided indemnity for, and had a duty to defend, the Buckley claim. P.T.P. also claimed damages for breaches of the insurance contract. The complaint further alleged that Atlantic and Melson were negligent in failing to place proper insurance coverage. Atlantic and Melson cross-claimed against T.H.E.

■ All parties to the state court action moved for summary judgment, raising a multitude of issues. The circuit court decided only one issue, and that by reliance on only one legal ground. The circuit court entered a judgment declaring that the original T.H.E. policy, i.e., the policy for the period April 2, 1987, to April 2, 1988, obliged T.H.E. to defend the Buckley claim. The trial judge reasoned that under Art. 48A, § 482, the burden was on T.H.E. to show that it had been prejudiced by the fact that the Buckley claim was reported to it sometime after June 1, 1988, but that there was no evidence that T.H.E. had been prejudiced by late reporting of the claim.[2]

Art. 48A, § 482 reads:

"Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy

---

2. Where the judgment appealed from is entered on motion for summary judgment, the appellate court ordinarily will review only the issue decided by the circuit court. *See Boyer v. State,* 323 Md. 558, 588, 594 A.2d 121, 136 (1991); *Orkin v. Holy Cross Hosp.,* 318 Md. 429, 435, 569 A.2d 207, 210 (1990); *Three Garden Village Ltd. Partnership v. United States Fidelity & Guar. Co.,* 318 Md. 98, 107–08, 567 A.2d 85, 89 (1989).

through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only .if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

In concluding that § 482 applied in that fashion to claims made policies, the circuit court relied entirely upon the opinion by the Court of Special Appeals in *St. Paul Fire & Marine Ins. Co. v. House*, 73 Md.App. 118, 533 A.2d 301 (1987). Although it recognized that decisions in other states supported *St. Paul*'s contention, the intermediate appellate court read "any insurer" in § 482 to mean every insurer, including those writing claims made policies. 73 Md.App. at 135, 533 A.2d at 309. The decision by the Court of Special Appeals in *House* was affirmed, in a 4–3 decision by this Court, on policy construction grounds and not by applying § 482 in the fashion approved by the Court of Special Appeals. 315 Md. 328, 554 A.2d 404.

While the Buckley action was pending in the federal court, the parties to the action before us stipulated to P.T.P.'s cost of defense of the Buckley action. Based on that stipulation and on its prior grant of partial summary judgment, the circuit court entered judgment in favor of P.T.P. against T.H.E. in the stipulated amount for breach of the duty to defend. At the request of all parties to this action, the circuit court certified as a final judgment its declaration that T.H.E. was obliged under the original policy to defend P.T.P. against the Buckley claim, and the court certified as a final judgment its award of damages for that breach.

T.H.E. appealed to the Court of Special Appeals.[3] We granted certiorari on our own motion prior to consideration of the matter by the intermediate appellate court.

---

3. The claim seeking a judgment declaring that T.H.E. owed a defense under the original policy can be viewed as a separate claim from the declaratory judgment sought concerning indemnification. Unlike the question of coverage for indemnification, the duty to defend is deter-

I

■ T.H.E.'s argument rests on the original policy provisions, and P.T.P.'s argument in support of the circuit court's ruling necessarily rests on § 482. Relevant to these arguments are the following policy provisions:

"SECTION I—COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.... This insurance does not apply to 'bodily injury' or 'property damage' which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy period.... We will have the right and duty to defend any 'suit' seeking those damages....

b. This insurance applies to 'bodily injury' and 'property damage' only if a claim for damages because of the 'bodily injury' or 'property damage' is first made against any insured during the policy period.

(1) A claim by a person or organization seeking damages will be considered to have been made when written notice of such claim is received and recorded by

---

mined on the basis of the allegations of a complaint, and those allegations are tested by the standard of "potentiality" of coverage. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842, 850 (1975). Under Fed.R.Civ.P. 54(b) it has been held that a judgment declaring that an insurer has a duty to defend under a comprehensive general liability policy may be certified as a final judgment, without the court's having declared the rights of the parties respecting indemnification, because "the duty to defend is distinct and separable from any duty to indemnify." *Avondale Indus., Inc. v. The Travelers Indem. Co.*, 887 F.2d 1200, 1203–04 (2d Cir.1989), *aff'g* 123 F.R.D. 80 (S.D.N.Y. 1988), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990).

us...." [4]

. . . .

## "SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

"2.  Duties In The Event Of Occurrence, Claim Or Suit.

a.  You must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the 'occurrence' took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the 'occurrence.'

. . . .

b.  If a claim is received by any insured you must:

. . . .

You must see to it that we receive written notice of the claim as soon as practicable."

## "SECTION V—EXTENDED REPORTING PERIODS

. . . .

"2.  A Basic Extended Reporting Period is automatically provided without additional charge.  This period starts with the end of the policy period and lasts for:

a.  Five years for claims arising out of an 'occurrence' reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of SECTION IV ...; or

b.  Sixty days for all other claims."

. . . .

"4.  Extended Reporting Periods do not extend the policy period or change the scope of coverage provided.  They

---

4.  Policy, § I.A.1.b(1), as presented above, reflects the amendment to that subparagraph in the basic policy that is effected by an endorsement to the policy.

apply only to claims for 'bodily injury' or 'property dam-
age' that occurs before the end of the policy period (but
not before the Retroactive Date ...).

Claims for such injury or damage which are first received
and recorded during the Basic Extended Reporting Peri-
od ... will be deemed to have been made on the last day
of the policy period."

T.H.E.'s argument is basic. Although the accident occurred
(8/27/87) after the retroactive date (4/2/87), and before the end
of the policy period (4/2/88), the claim was not first made until
more than sixty days after the end of the policy period.
Under the policy involved here, for a claim to be first made, it
must be received by the insurer. Policy, § I.A.1.b(1). The
outside time limit within which either the occurrence of Buck-
ley's accident or a claim asserted by Buckley was to be
reported to the insurer was not later than sixty days after the
end of the policy period, *i.e.,* on or before June 1, 1988. The
occurrence, as an occurrence, was not reported and, under the
evidence, the claim made could not have been reported prior
to June 6, 1988. Thus, submits T.H.E., there is no coverage
because the insuring agreement applies only to claims for
damages "first made against any insured during the policy
period," or during its sixty day extension.[5]

P.T.P. relies on § 482, quoted above. P.T.P.'s argument, in
the posture in which this case comes to us, is that T.H.E.'s
disclaimer of coverage rests on P.T.P.'s failure to give the
requisite notice, in that notice should have been given by June
1, 1988, but was not given until later.[6] Under § 482, P.T.P.
submits, T.H.E. must show actual prejudice resulting from the
delay measured from June 1, 1988, to the date T.H.E. received
the report. Because the circuit court held, correctly in

---

**5.** The sixty day reporting period extension beyond April 2, 1988, was
part of the basic policy and premium. There was available additional,
optional coverage for a longer extended reporting period that P.T.P. did
not purchase.

**6.** It is unnecessary to a decision of the issue before us to decide the date
when the Buckley claim was reported to T.H.E.

P.T.P.'s view, that T.H.E. has not shown prejudice, T.H.E. may not disclaim coverage based on P.T.P.'s failure to give the requisite notice.

In rebuttal T.H.E. argues that § 482 does not enlarge the policy period, or the extended reporting period, of a claims made policy to create coverage for a claim that was first made after the policy had expired by its terms. Rather, the purpose of § 482 is to prevent forfeitures of coverage that had attached and not to create coverage that never attached.[7]

## II

Section 482 was enacted by Chapter 185 of the Acts of 1964, in apparent response to *Watson v. United States Fidelity & Guar. Co.*, 231 Md. 266, 189 A.2d 625 (1963). *House*, 315 Md. at 332, 554 A.2d at 406. *Watson* applied a strict condition precedent analysis to the insured's obligation to give notice of an accident under an occurrence coverage, automobile liability policy. *Id.*

"The response of § 482 [to *Watson*], in substance, makes policy provisions requiring notice to, and cooperation with, the insurer covenants and not conditions. The statute measures by the standard of actual prejudice the materiality of any breach of those covenants by the insured for the purpose of determining if the breach excuses performance by the insurer."

---

7. It would be an incorrect oversimplification to express the issue here to be whether § 482 applies at all to claims made policies. This Court's *House* held that § 482 can apply to an insured's covenant in a claims made policy to report claims " 'as soon as possible.' " 315 Md. at 341, 554 A.2d at 410–11. The application of § 482 recognized in *House* can be illustrated by using the provisions from the T.H.E. policy quoted above. Assume that P.T.P. received Buckley's attorney's claim letter in late May and reported it to T.H.E. on or before June 1, 1988. Assume further that T.H.E. disclaimed coverage by contending that P.T.P. had breached § IV.2.a of the policy by failing to notify T.H.E. "as soon as practicable" of the occurrence of the accident on August 27, 1987. To effectuate that hypothetical disclaimer, T.H.E. would be required by § 482 to prove actual prejudice. This hypothetical, of course, assumes a claim made (*i.e.*, reported) within the extended reporting period.

*Id.* Section 482 accomplishes its objective by requiring two elements: First, there must be a specified type of breach by the insured; and second, the insurer must show the materiality of the breach by demonstrating that the lack of notice or cooperation has resulted in actual prejudice.

Here, T.H.E. does not deny coverage because of an alleged material failure by P.T.P. to perform a covenant to give notice, or to satisfy a policy provision that might be phrased as a condition that must be satisfied to prevent the loss of coverage that otherwise would apply. In this case the extended reporting period under the original policy had expired before P.T.P. reported the Buckley claim to T.H.E. The original policy had come to an end with respect to newly reported claims. Section 482 could no more revive the original policy to cover the Buckley claim than § 482 could reopen an occurrence policy to embrace a claim based on an accident that happened after the end of the policy period.

This analysis was well developed by Chief Judge Murphy in his dissent in *House,* portions of which we set forth below with modifications adapted to the facts of the instant case.

"The fundamental question now is whether, at the time [P.T.P.] reported the [Buckley] claim, there existed a contract between the parties, for one cannot breach a contract which is not in existence.

"To answer this question, [we] look again to the nature of claims made and occurrence policies. Both types of policies include provisions which define (1) the events for which coverage is provided and (2) when and how coverage can be initiated. For example, an occurrence policy has a fixed time period defining what specific events or occurrences will be covered. When this time period ends, however, the insurer's responsibilities under the policy do not end, for it may be held liable for the covered events, barring statutes of limitations, at any time thereafter.

"Claims made policies are almost the mirror image of occurrence policies in that they often cover claims based on events which occurred many years *before* the policy came

into effect, but limit the scope of coverage to claims based on these events which are made within the limited time period of the policy. Unlike the occurrence policy, the insurer's potential liability ends when the policy expires.

"Therefore, when the claims made policy at issue here expired there was nothing left. The policy could not be breached because there was no longer a policy to be breached. Any claim made after its expiration is of the same effect as an accident or event which occurs after the 'expiration' of an occurrence policy. There was no breach; there was simply no coverage. [We] therefore think that § 482 is inapplicable to a 'reporting' type of claims made policy when the claim is made after the expiration of the policy."

*House*, 315 Md. at 355–56, 554 A.2d at 418 (Murphy, C.J., dissenting).

The foregoing analysis is consistent with the overwhelming weight of authority, measured both numerically and by persuasiveness. The notice-prejudice rule is the law of many states, having been adopted either legislatively or judicially. Typically, a state's notice-prejudice rule was adopted when the insuring agreements of liability policies covered occurrences during the policy period. After claims made coverages began to be written, and when insureds, who had reported their claims after their claims made policies had expired, sought to have the notice-prejudice rule applied to their claims made policies, the nearly universal response of courts was to reject the argument of the insureds. This is because the effect of the argument is to enlarge the policy to embrace claims that it was never intended to cover.

In Massachusetts the notice-prejudice rule, like that of Maryland, was enacted by the legislature. Massachusetts General Laws ch. 175, § 112 (1987), dealing with automobile and "any other" liability policies that insure against personal injury and property damage, in relevant part provides:

"An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or

claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby."

*Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 409 N.E.2d 185 (1980), had held that the rule enunciated in the statute was also the common law of Massachusetts, and that the rule applied to all types of insurance policies.

In *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 551 N.E.2d 28 (1990), an engineer, the insured under a claims made policy expiring May 1, 1985, did not report a claim until March 1987. The Supreme Judicial Court of Massachusetts pointed out that the purpose of giving notice "as soon as practicable" in an occurrence policy "is to permit an insurer to make an investigation of the facts and occurrence relating to liability," while, in claims made policies, "fairness in rate setting is the purpose of a requirement that notice of a claim be given within the policy period or shortly thereafter." 551 N.E.2d at 29. The court then explained the significance of the different purposes, saying:

"The closer in time that the insured event and the insurer's payoff are, the more predictable the amount of the payment will be, and the more likely it is that rates will fairly reflect the risks taken by the insurer. The purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists. Prejudice for an untimely report in this instance is not an appropriate inquiry."

*Id.* at 30.

Of even more significance here is that the court in *Chas. T. Main, Inc.*, expressly rejected the argument that the Massa-

chusetts notice-prejudice statute applied to the claims made policy at issue. Such a requirement, the court said, "would defeat the fundamental concept on which claims-made policies are premised.... It would be unreasonable to think that the Legislature intended such a result." *Id.* (footnote omitted); *see also National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 167–68 (1st Cir.1991) (applying Massachusetts law).

New Jersey adopted a notice-prejudice rule in *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870, 874 (1968), a case involving automobile liability insurance. In *Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395 (1985), the Supreme Court of New Jersey refused to apply that rule to a claims made policy. The court reasoned as follows:

> "By contrast, the event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, *gratis,* resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by 'claims made' policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of 'claims made' insurance. So material a modification in the terms of this form of insurance widely used to provide professional liability coverage both in this State and throughout the country would be inequitable and unjustified. The *Cooper* [*v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870 (1968)] doctrine has a clear application to policies analogous to the automobile liability policy there involved. It has, however, no application whatsoever to a 'claims

made' policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage."

495 A.2d at 406.

The Supreme Court of Florida adopted a notice-prejudice rule in the automobile liability insurance case of *Tiedtke v. Fidelity & Casualty Co. of N.Y.*, 222 So.2d 206, 209 (Fla.1969). The contention advanced by P.T.P. to us was advanced by an insured to the Supreme Court of Florida in *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512 (Fla.1983). The court rejected the argument as one seeking an extension of coverage, by the court, which was different from "a mere condition of the policy," and which would "in effect rewrite[ ] the contract between the two parties." *Id.* at 515–16.

The Supreme Court of Rhode Island adopted a notice-prejudice rule in *Pickering v. American Employers Ins. Co.*, 109 R.I. 143, 282 A.2d 584, 592–93 (1971), a case involving the uninsured motorists provisions of an automobile liability policy. The United States Court of Appeals for the First Circuit recently has predicted that the Rhode Island Supreme Court, if faced with the instant issue, would not apply the notice-prejudice rule to a claims made liability policy. *DiLuglio v. New England Ins. Co.*, 959 F.2d 355, 359 (1st Cir.1992).

The Supreme Court of California applies a notice-prejudice rule to occurrence policies. *See, e.g., Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 828–29, 384 P.2d 155, 156–57 (1963); *Abrams v. American Fidelity & Casualty Co.*, 32 Cal.2d 233, 195 P.2d 797, 799 (1948); *Reed v. Pacific Indem. Co.*, 101 Cal.App.2d 151, 225 P.2d 255, 261 (1950). The California Court of Appeal for the First District applied the notice-prejudice rule to a claims made policy in *Northwestern Title Security Co. v. Flack*, 6 Cal.App.3d 134, 85 Cal.Rptr. 693, 696–98 (1970). The same issue was decided by the California Court of Appeal for the Second District in *Pacific Employers Ins. Co. v. Superior Court*, 221 Cal.App.3d 1348, 270 Cal.Rptr. 779 (1990). *Pacific Employers* pointed out that the *Northwestern Title* court found that the distinction between claims made and occurrence policies did not require a departure from

the application of the notice-prejudice rule. Rather, it simply applied *Campbell* to the claims made policy. *Pacific Employers* then held that to apply *Campbell* in the case before it "would be to convert [the] claims-made policy into an occurrence policy." 270 Cal.Rptr. at 784.

The United States Court of Appeals for the Ninth Circuit in *Burns v. International Ins. Co.*, 929 F.2d 1422 (9th Cir.1991), faced with the division of authority at the intermediate appellate level in California, was required to predict how the Supreme Court of California would decide the issue. The Ninth Circuit agreed with *Pacific Employers*, because "[t]o apply the notice-prejudice rule to a claims-made policy would be to rewrite the policy, extending the policy's coverage at no cost to the insured." *Id.* at 1425.

The Supreme Court of Minnesota applies a notice-prejudice rule. *See, e.g., Reliance Ins. Co. v. St. Paul Ins. Co.*, 307 Minn. 338, 239 N.W.2d 922, 924–25 (1976). The United States Court of Appeals for the Eighth Circuit in *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422 (8th Cir.1989), opined that the rule established in *Reliance* would not apply to the reporting, after policy expiration, of a claim under a claims made policy. *Id.* at 424–25 "[T]he very description of the risk covered included the requirement that claims be both made and reported within the policy period." *Id.* at 425.

The Supreme Court of Pennsylvania adopted a notice-prejudice rule in *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193, 198 (1977), an automobile liability policy case. *City of Harrisburg v. International Surplus Lines Ins. Co.*, 596 F.Supp. 954 (M.D.Pa.1984), *aff'd*, 770 F.2d 1067 (3d Cir.1985), concluded, on the aspect of the case relevant here, that *Brakeman* was inapplicable to the claims made policy involved in the federal court action. The notice provision in a claims made policy "provides a certain date after which an insurer knows that it no longer is liable under the policy, and accordingly, allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *Id.* at 962.

And see *Sletten v. St. Paul Fire & Marine Ins. Co.*, 161 Ariz. 595, 780 P.2d 428, 430 (Ariz.Ct.App.1989); *Campbell & Co. v. Utica Mut. Ins. Co.*, 36 Ark.App. 143, 820 S.W.2d 284, 288 (1991); *Jefferson Guar. Bank v. Westbank–Marrero Cab Co.*, 570 So.2d 498, 500–01 (La.Ct.App.1990); *Stine v. Continental Casualty Co.*, 419 Mich. 89, 349 N.W.2d 127, 134–36 (1984) (construing statute); *Continental Casualty Co. v. Maxwell*, 799 S.W.2d 882, 887 (Mo.Ct.App.1990); *United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir.1989) (applying Ohio law); *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 921 (Tex.Ct.App.1988); *Safeco Title Ins. Co. v. Gannon*, 54 Wash. App. 330, 774 P.2d 30, 34–35, *cert. denied*, 113 Wash.2d 1026, 782 P.2d 1069 (1989). *But see Sherlock v. Perry*, 605 F.Supp. 1001, 1004–05 (E.D.Mich.1985) (Michigan law) (construing statute).

In the case before us the original policy had expired before a claim was asserted against P.T.P. That expiration resulted from the terms of coverage and is not attributed to a "breach by P.T.P." The problem at which § 482 is directed is not presented.[8]

In an attempt to demonstrate that § 482 applies to claims made policies, Atlantic and Melson point to Senate Bill 503 of the 1988 session of the General Assembly. That bill proposed amending § 482 for

> "the purpose of clarifying that an insurer denying coverage under a claims-made insurance policy due to the insured's failure to report the claim within the policy period shall not be required to establish that such lack of notice resulted in actual prejudice to the insurer...."

1988 Journal of Senate Proceedings at 548. Senate Bill 503 was referred to the Senate Finance Committee, where by a 7 to 1 margin, it received an unfavorable report.

---

**8.** T.H.E. does not argue that there is no coverage because of P.T.P.'s failure to report the *occurrence*. Hence, P.T.P.'s effort to characterize the disclaimer as the result of a breach by P.T.P. of § IV.2.a of the policy misses the critical deficiency. *See also* n. 7.

Atlantic and Melson argue that the failure of Senate Bill 503 to pass "must be interpreted as a demonstration that the will of the Maryland General Assembly was to maintain the 'very broad' language of the statute.... Consequently, the judiciary should not actively legislate on a matter considered and rejected by the General Assembly." Brief of Appellees, Atlantic and Melson, at 8.

"[T]he fact that a bill on a specific subject fails of passage in the General Assembly is a rather weak reed upon which to lean in ascertaining legislative intent." *Automobile Trade Ass'n v. Insurance Comm'r*, 292 Md. 15, 24, 437 A.2d 199, 203 (1981); *see, e.g., Police Comm'r v. Dowling*, 281 Md. 412, 420–21, 379 A.2d 1007, 1012 (1977); *Harden v. Mass Transit Admin.*, 277 Md. 399, 406, 354 A.2d 817, 820–21 (1976). This weak reed does not overcome the language of § 482 and its purpose, in relation to the differences between occurrence and claims made policies, as demonstrated by the body of case law that has developed on the issue presented here.

Accordingly, we reverse and remand for further proceedings.[9]

JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.

ELDRIDGE Judge, dissenting:

By enacting Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 482, the General Assembly sought to protect consumers of liability insurance, as well as injured persons, by providing that an insurance company may not disclaim coverage under *any* liability insurance policy on the ground that the

---

9. There remain for decision by the circuit court other issues between the parties, including a substantial controversy revolving around the renewal policy and its May 27, 1988, retroactive date. That retroactive date creates the coverage gap under the legal and factual analyses advocated by T.H.E.

insured failed to give "requisite notice to the insurer" unless the insurer established that the failure resulted in actual prejudice. The Court today, however, would permit an insurance company to circumvent the statute by the simple expedient of defining terms in an insurance policy in a manner contrary to the ordinary meaning of those terms.

Under the insurance policy at issue in this case, the policy period was from April 2, 1987, to April 2, 1988.[1] The accident occurred within this period. A claim was made by the third party to the insured on June 6, 1988, after the expiration of the policy period and the expiration of the extended reporting period for claims made. Immediately thereafter, the insured reported both the occurrence and the claim to the insurer. As later explained, the insurance policy had elements of both a claims made policy and an occurrence policy.

The majority's analysis with respect to § 482 and the policy in this case is flawed for two reasons. First, the majority does not distinguish between the provisions of a claims made policy which establish coverage and the provisions which require notice. Second, the majority does not acknowledge the occurrence provisions of the policy and the applicability of § 482 to these provisions.

(1)

Article 48A, § 482, provides as follows:

**"Disclaimer of coverage because of lack of notice or cooperation from insured.**

"Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the

---

1. Because the trial judge did not address issues relating to the "renewal" policy, I do not comment on them here. I agree with the majority that a substantial controversy remains to be resolved with respect to the renewal policy and its May 27, 1988, retroactive date.

insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

By its terms the statute applies to *any* policy of liability insurance. The majority holds that § 482 does not apply to reporting type claims made policies. The majority's broad brush reasoning, however, extends beyond the context of this case in a way that might well undermine the effectiveness of § 482.

In a claims made policy, the event which normally triggers coverage is a third party making a claim upon an *insured.* The ordinary meaning of "claims made" in insurance parlance is that the critical moment for establishing coverage is the time at which the injured third person's claim is made against the insured. *St. Paul Fire & Marine Ins. v. House,* 315 Md. 328, 333, 554 A.2d 404, 407 (1989) ("The ordinary meaning of 'claim made' refers to the assertion of a claim by or on behalf of the injured person against the insured"). In an occurrence policy the critical moment for establishing coverage is the injury causing accident itself.

Whether the insured event is the filing of a claim by the injured third person in a claims made policy, or the happening of an occurrence in an occurrence policy, notice provisions exist for both kinds of policies. In a claims made policy, notice to the insurer by the insured that a claim has been made against him typically is required. In an occurrence policy, notice to the insurer by the insured of the covered accident usually is required.

Section 482 deals with a liability policy's *notice* provision, *i.e.,* notice by the *insured to the insurer* of the happening of an event triggering coverage. It does not apply to the portion of the policy which establishes the essential terms for coverage, *i.e.,* an accident/occurrence or the making of a claim by the injured third party. In a claims made policy the requirement that a claim against the insured be made during the policy period essentially defines the coverage available. The *notice* of which § 482 speaks, in a claims made policy, is the

notice by the insured to the insurer that a claim against the insured has been made during the policy period. Both the language and purpose of § 482 require that it be applied to the clause in a claims made policy providing for notice to the insurer.

The majority, however, contends that, because T.H.E. Insurance Co. defined the time at which a claim is made as "when written notice of such claim is received and recorded by us," this claims made policy makes the reporting of the claim by the *insured* to the *insurer* the insurable event. By allowing the insurer to define claims made in terms of notice to the insurer, and by holding that § 482 does not apply to this provision in a claims made policies, the majority opens the door for insurers to circumvent the statute.

As previously stated, the triggering event for coverage in a claims made policy is the making of a claim by an injured person. By attempting to alter the ordinary meaning of "claims made" to create coverage which hinges on receiving notice of such a claim from its insured, the insurance company is attempting to create a condition precedent to insurance coverage. This is precisely the situation the statute was designed to avoid.

Section 482 was enacted in response to the Court of Appeals' decision in *Watson v. United States Fidelity & Guar. Co.,* 231 Md. 266, 189 A.2d 625 (1963). In that case, this Court held that the policy provision requiring the reporting of an accident "as soon as practicable" was a condition precedent to any action on the policy. In *Watson,* the Court held that the condition was unsatisfied and that the insured was not entitled to coverage. In *St. Paul Fire & Marine Ins. v. House, supra,* we considered the General Assembly's purpose in enacting § 482, stating that the statute "makes policy provisions requiring notice to, and cooperation with, the insurer covenants and *not* conditions. The statute measures by the standard of actual prejudice the materiality of any breach of those covenants by the insured for the purpose of determining if the

breach excuses performance by the insurer." 315 Md. at 332, 554 A.2d at 406 (emphasis added).

The obvious purpose of the statute was to prevent an insurance company from refusing to cover a matter on the sole ground that the company failed to receive timely notice from its insured. As we stated in *House*, "[a] policy defense resting on [the] covenant to give notice is foursquare within Art. 48A, § 482." 315 Md. at 341, 554 A.2d at 411. Yet the majority, by accepting the insurers' contorted definition of "claims made," has signaled to the insurance industry that it may, by mere drafting, avoid the statute.

The majority opinion suggests that its holding is limited to claims made policies. The majority's rationale, however, is not limited to claims made policies. An insurance company, in an occurrence policy, could define "occurrence" as notice to the insurer of the event or the accident. Under such a policy and the majority's rationale, if there were no notice to the insurer during the policy period, there would be no occurrence for purposes of coverage and thus no disclaimer of coverage within the meaning of § 482.

Of course, § 482 only applies if, during the pertinent time, there existed a contract of insurance between the parties. In this case the claim was made by the injured person to the insured after the expiration of the original policy. Thus, the claims made provisions of the original policy were not in effect. It is for this reason that § 482 would not apply. Contrary to the majority's view, § 482 is not rendered inapplicable because the claim was reported by the insured to the insurer after the end of the policy period or because § 482 does not apply to reporting type claims made policies.

### (2)

If the above-discussed policy provisions were the only provisions implicated in the case, I would concur with the majority's result although not its reasoning. This policy, however, is not strictly a claims made policy; it has occurrence policy ele-

ments. Under the circumstances, § 482 applies. The insurance contract states:

"COMMERCIAL LIABILITY CONDITIONS

\* \* \* \* \* \*

"2. Duties in the event of an Occurrence, Claim or Suit.

"a. You must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the 'occurrence' took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the 'occurrence.'

"Notice of an 'occurrence' is not notice of a claim.

\* \* \* \* \* \*

"EXTENDED REPORTING PERIODS

\* \* \* \* \* \*

"2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. Five years for claims arising out of an 'occurrence' reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2. a. of Section VI—Commercial General Liability Conditions."

Under the policy if the insured notifies the insurer of an occurrence during the policy period or within 60 days thereafter, any claim made within five years of the expiration date is covered. The insured failed to provide notice to the insurer of the occurrence in this case. If the insured had provided notice of the occurrence, the claim, filed within five years of the end of the policy period, would have been covered.

This is precisely the type of situation that § 482 was designed to encompass. Section 482 provides that when an insured breaches an insurance policy by failing to give requisite notice of the event triggering coverage, the insurer must

prove actual prejudice in order to rely on the breach to disclaim coverage. Since the trial court found as a fact that there was no actual prejudice, its judgment should be affirmed.

The majority's broad opinion fails to effectuate the purpose of § 482 of the Insurance Code and allows insurers to establish conditions precedent to coverage based upon a failure to "cooperate with the insurer" or a failure to give "requisite notice to the insurer." The majority's opinion and decision cannot be squared with the General Assembly's purpose in enacting § 482.

Judge ROBERT M. BELL has authorized me to state that he concurs with the views expressed herein.