IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0598
════════════
Prodigy Communications 
Corp., Petitioner,
 
v.
 
Agricultural Excess & 
Surplus Insurance Company, n/k/a Great American E & S Insurance Company and 
Great American Insurance Company, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 1, 
2008
 
 
            
Justice Johnson, joined by 
Justice Hecht and Justice Willett, dissenting.
            
Today the Court rewrites an unambiguous insurance contract and changes 
the agreement of the parties. It holds that AESIC cannot deny coverage to 
Prodigy even if Prodigy breached explicit contract language making it a 
condition precedent for it to give notice of the claim “in writing, as soon as 
practicable.” The Court does so by departing from well-established insurance 
policy construction rules as well as by failing to adhere to the choice made by 
the Court in Members Mutual Insurance Co. v. Cutaia, 476 S.W.2d 278, 280-81 (Tex. 1972), to interpret 
insurance contracts as written and leave changes to the Legislature or insurance 
regulatory agency. I dissent.
            
The rules governing interpretation of contracts in general apply to 
interpreting insurance policies. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa. 
v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The parties do not 
contend AESIC’s policy is a form promulgated by the 
State or a regulatory authority, so we seek to ascertain the intent of the 
parties and interpret the policy accordingly. See Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006). In ascertaining the parties’ 
intent, we look first and primarily to the written words used. Id. (“As with any other contract, the parties’ intent is governed by what they said . 
. . .”); Balandran v. Safeco Ins. Co. of 
Am., 972 S.W.2d 738, 741 (Tex. 1998) (“Our 
primary goal, therefore, is to give effect to the written expression of the 
parties’ intent.”); Forbau v. Aetna Life 
Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). Despite regular invitations to add 
to or ignore language when interpreting insurance policies, this Court has 
generally adhered to the principle that judges interpret language to which 
parties have agreed, not alter it. E.g., Fortis Benefits v. Cantu, 234 S.W.3d 642, 647, 
649 (Tex. 2007) (noting that contract rights arise from the parties’ agreement, 
not principles of equity and declining to “judicially rewrite the parties’ 
contract by engrafting extra-contractual standards”); Fiess, 202 S.W.3d at 753 (“For more than a century 
this Court has held that in construing insurance policies ‘where the language is 
plain and unambiguous, courts must enforce the contract as made by the parties, 
and cannot make a new contract for them, nor change that which they have made 
under the guise of construction.’”) (quoting E. Tex. Fire Ins. Co. v. 
Kempner, 27 S.W. 122, 122 (1894)); but see PAJ, Inc. v. Hanover Ins. 
Co., 243 S.W.3d 630, 636-37 (Tex. 2008) (holding that as to an 
occurrence-based policy, an insured’s breach of its obligation to timely notify 
the insurer of a claim or suit does not defeat coverage if the insurer was not 
prejudiced by the delay).
            
In Excess Underwriters at Lloyd’s, London v. Frank’s Casing Crew & 
Rental Tools, Inc., we rejected an insurer’s claim for equitable 
reimbursement from its insured, in part, because allowing reimbursement would 
have required us to “‘rewrite the parties’ contract or add to its language.’” 
246 S.W.3d 42, 50 (Tex. 2008) (quoting Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 162 (Tex. 
2003)). In Excess Underwriters we also quoted with 
approval language the Court used in Fortis 
Benefits where we said we are “‘loathe to judicially rewrite the parties’ contract by engrafting extra-contractual 
standards.’” Id. at 51 
(quoting Fortis Benefits, 234 S.W.3d at 
649).
            
But today the Court holds AESIC cannot deny coverage to Prodigy even if 
Prodigy breached the explicit contract language requiring notice of the claim 
“in writing, as soon as practicable” because (1) that part of the notice 
provision was not an essential part of the bargained-for exchange; (2) AESIC did 
not show it was prejudiced by the timing of written notice; and (3) written 
notice was given within the time period allowed by another part of the policy’s 
notice provision. ___ S.W.3d ___, ___. The Court poses 
the issue as “whether ‘notice as soon as practicable’ is an essential part of 
the bargained-for exchange in the claims-made policy at issue here.” I disagree 
that the record shows the “as soon as practicable” notice provision was not an 
essential part of the parties’ agreement.
            
In determining whether the notice provisions of AESIC’s policy were essential to the agreement, the first 
place to seek the answer is the policy itself. AESIC’s 
policy consists of a declarations page, a cover page, three pages setting out 
the terms of the insurance, plus endorsements. The statement “THIS IS A CLAIMS 
MADE POLICY, READ IT CAREFULLY” appears at the top of the declarations page and 
the first page of the policy. The first section of the policy is “Section I. 
Insuring Agreements” made up of two paragraphs—one applicable to Flashnet’s directors and officers and the other applicable 
to Flashnet as a company. Page three of the policy 
contains “Section VII. Notice of Claim.” The Notice of 
Claim provision originally contained condition precedent language and a 
hard-and-fast requirement that written notice of any claim be given within 
ninety days after the claim was made. It was amended to require written notice 
to AESIC as soon as practicable “but in no event later than ninety (90) days 
after the expiration of the Policy Period or Discovery Period.” The entire 
endorsement reads as follows:
 
The 
Directors or Officers shall, as a condition precedent to their rights 
under this Policy, give the Insurer notice, in writing, as soon as practicable 
of any Claim first made against the Directors and Officers during the Policy 
Period, or Discovery Period (if applicable), but in no event later than ninety 
(90) days after the expiration of the Policy Period or Discovery Period, and 
shall give the Insurer such information and cooperation as it may reasonably 
require.
 
(emphasis added). Timely notice was clearly and explicitly a 
condition precedent to any rights under the policy. Prodigy does not contend the 
endorsement language is unclear or that Flashnet ever 
sought any other notice language. Nor does Prodigy contend that Flashnet, a company involved with sophisticated legal 
matters such as public stock offerings and securities law was misled about or 
protested the notice provisions when it purchased the policy and the 
endorsement.
            
The record and sequence of events indicate that all the notice language, 
including timing of notice, was an important part of the policy: timely notice 
was a condition precedent in the original policy and the condition precedent 
language was carried forward into the endorsement. Certainly the record does not 
show as a matter of law that the notice language was not essential to the 
parties’ agreement. The Court’s conclusion otherwise is in derogation of the 
parties’ intent as expressed by policy language.
            
The Court concludes, relying on decisions from other jurisdictions and 
legal treatises, that in order for an insurer to deny coverage under claims-made 
policies for breach of a reporting requirement, the insurer (1) must show 
prejudice if the insured gives notice of a claim within the policy period or a 
specified time after policy termination, even though the notice was not “as soon 
as practicable,” but (2) need not show prejudice if the insured gives notice of 
a claim outside the policy period or the time allowed in the policy for 
reporting claims after policy termination, if any. ___ S.W.3d 
at ___. The Court says a requirement of notice “as soon as practicable” 
is more part of the investigative process and not as much a part of the coverage 
bargain between the insurer and insured as is an end-of-policy notice 
requirement. But the insuring agreements and notice provisions of AESIC’s policy are completely separate. That separation 
militates against classifying one notice provision in Section VII as more 
important because it is a coverage-type provision and the other notice provision 
as less important because it is an investigation-type provision. Neither of 
those classifications for the notice provisions is indicated by policy 
language.
            
Furthermore, the record demonstrates no logical reason to apply a 
different rule to AESIC’s end-of-policy notice 
provision. There is no basis in the record for concluding Prodigy’s one-year 
delay in reporting the claim was any more or less important to AESIC’s insurance business than if Prodigy had delayed for a 
year reporting a claim made on the last day of the Discovery Period. In the 
latter circumstance, the Court says AESIC would not be required to show 
prejudice and the condition precedent language would preclude the insurer’s 
liability because the insurer needs to close its books as to the policy. We 
should be bound by the record the parties bring, and the record does not support 
either the latter statement or treating the delays differently. But first and 
foremost, the policy language shows AESIC and Prodigy intended for the two 
notice provisions to have the same effect: both are conditions precedent to 
Prodigy’s rights under the policy. We should respect the agreement.
            
In holding a showing of prejudice is required for failure to give notice 
as soon as practicable, but not for notice failing to comply with the 
end-of-policy provision, the Court relies on cases from other states. But two 
cases emphasized by the Court highlight the very point made long ago in Cutaia that the Court should defer to legislative and 
regulatory entities to (1) address the notice-prejudice question, and (2) change 
policy language if change was deemed necessary. Cutaia, 476 S.W.2d at 
280-81. In T.H.E. Insurance Co. v. P.T.P., 628 A.2d 223 (Md. 1993) 
and Chas. T. Main, Inc. v. Fireman’s Fund Insurance Co., 551 N.E.2d 28 
(Mass. 1990), referenced by the Court, the notice-prejudice issue was addressed 
by statute and the courts were considering how notice provisions should be 
treated in light of the statutes. In Chas. T. Main, the Supreme Judicial 
Court of Massachusetts considered a claims-made professional liability policy in 
light of a statute that provided, in part, as follows:
 
An 
insurance company shall not deny insurance coverage to an insured because of 
failure of an insured to seasonably notify an insurance company of an 
occurrence, incident, claim or of a suit founded upon 
an occurrence, incident or claim, which may give rise to liability insured 
against unless the insurance company has been prejudiced thereby.
 
Mass. Gen. Laws ch. 175, § 112 
(1988). The Massachusetts court said, without reference to 
the record, “the requirement that notice of the claim 
be given in the policy period or shortly thereafter in the claims-made policy is 
of the essence in determining whether coverage exists.” Chas. T. Main, 
551 N.E.2d at 30. However, the court, in summary 
fashion, held the statute applied only to the “as soon as practicable” notice 
and not to the “within the policy year” notice. Id. It stated that applying the statute 
to “within the policy year” notice provisions would defeat the fundamental 
concept on which claims-made policies are premised, and it would be unreasonable 
to think that the Legislature intended such a result. Id.
            
And in T.H.E. Insurance Co., the Maryland Court of Appeals 
considered the effect of a statutory notice-prejudice provision on a claims-made 
policy. 628 A.2d at 223. The statute involved 
provided:
 
Where any 
insurer seeks to disclaim coverage on any policy of liability insurance issued 
by it, on the ground that the insured or anyone claiming the benefits of the 
policy through the insured has breached the policy by failing to cooperate with 
the insurer or by not giving requisite notice to the insurer, such disclaimer 
shall be effective only if the insurer establishes, by a preponderance of 
affirmative evidence that such lack of co-operation or notice has resulted in 
actual prejudice to the insurer.
 
Md. Ann. Code of 1957 art. 48A, § 482 (1991 Repl. Vol.). The 
court noted that under one of its previous holdings, if 
a claim had been reported within the extended reporting period, the insurer 
would have had to prove actual prejudice. T.H.E. Ins. Co., 628 A.2d at 226 n.7. However, the court held that the statute did not 
operate to revive the policy as to notice of a claim given after the end of the 
policy period. Id. at 
227. Texas does not have a statute, regulation, or 
agency directive that similarly applies to AESIC’s 
policy.[1]
            
Even disregarding the record, the general discussion of claims-made 
policies by which the Court eventually differentiates between the two types of 
notices does not support the step the Court takes. The claims-made policy 
involved here insures against claims first made against directors and officers 
during the policy period. As noted above, the notice and insuring agreements of 
AESIC’s policy are separate: the Insuring Agreements 
are in Section I; the Notice of Claim provisions are in Section VII. For all 
practical purposes AESIC’s policy insures against 
events—claims first made during the policy period—just as an occurrence policy 
insures against events—occurrences during the policy period. The difference is 
that under occurrence policies the insurer may not know of the event it has 
insured against for a long time after the event, whereas AESIC should know of 
the event it has insured against (a claim against its insured) during the policy 
period or within ninety days after expiration of the Discovery Period. Thus, 
under AESIC’s claims-made policy as it is written, the 
notice requirements terminate the insurer’s obligations (1) as the policy period 
passes without notice of claim being given, or (2) at the latest, ninety days 
after the Discovery Period ends. But when courts rewrite existing policy 
provisions as the Court does in this case, insurers’ actuarial predictions of 
losses and expenses, and the process of setting premium rates to cover projected 
losses and expenses are disrupted. See Neil A. Doherty, The Design of 
Insurance Contracts When Liability Rules are Unstable, 58 J. of Risk and Ins. 227, 227 (1991) 
(“[T]he recent liability insurance ‘crisis’ in the United States appears to be a 
response to a destabilization of the legal system. Insurers argue that they are 
able to insure the liabilities of clients arising under an unchanging set of 
liability rules, but they cannot insure against changes in the rules 
themselves.”). Policy language and its effects on the insurer’s business are 
matters better addressed through the legislative and regulatory processes than 
through the judicial process. The legislative and regulatory processes allow 
prospective implementation of changes to policy language and prospective 
calculation of premiums based on risks assumed by the insurer. Modifications to 
agreements through the judicial process, however, are primarily retrospective, 
long after the contracts were entered into and premiums calculated and paid 
based on agreed-to policy language.
            
In Cutaia, the Court recognized these 
policy reasons behind leaving changes to the Legislature or regulatory agency. 
Cutaia, 476 S.W.2d at 
280-81. But here, the Court does not respect the agreement of the parties 
or exercise the restraint that it did in Cutaia. In Cutaia an 
automobile liability policy required, as one of several conditions precedent to 
the insured’s rights under the policy, that the insured give notice of any 
accident to the insurer and immediately forward any suit papers. Id. at 
278. Cutaia, the insured, was sued but failed 
to forward suit papers to the insurer. Id. Following a trial and entry of 
judgment against Cutaia, the insurer denied coverage 
because Cutaia did not forward the suit papers. 
Id. at 
279. In rendering judgment for the insurer, we noted “[t]here is no 
provision in the policy that failure to comply with the conditions precedent 
would be excused if no harm or prejudice were suffered by the insurer; and 
such a provision would have to be inserted into the policy by 
implication.” Id. at 278 (emphasis added). The Court 
declined to override the insurance policy language and by judicial fiat add a 
prejudice provision to the policy:
 
            
We are, therefore, faced with plain wording of the contract and the 
holdings of this Court; and we are also faced with facts which show an apparent 
injustice. The problem then arises as to whether, or what, changes should be 
made, and by whom. Should this Court overrule its former decisions and say that 
provisions in the policy are Not conditions precedent 
to liability? Or should we imply into the policy a provision that failure to 
comply with the condition precedent will be excused if no harm or prejudice is 
shown? Or should we enforce the provisions as written and call the matter to the 
attention of those who, for the public, are charged with prescribing policy 
forms as well as with the approval or disapproval of the provisions of the 
policy?
 
            
. . . .
 
            
Our conclusion is, however, that on balance it is better policy for 
the contracts of insurance to be changed by the public body charged with their 
supervision, the State Board of Insurance, or by the Legislature, rather than 
for this Court to insert a provision that violations of conditions precedent 
will be excused if no harm results from their violation.
 
Id. at 280, 281 
(emphasis added).
            
Similar to the situation in Cutaia, 
Prodigy’s written notice did not comply with requirements agreed to as 
conditions precedent when the policy was purchased. Nevertheless, the court 
holds Prodigy’s untimely notice of claim is now timely and presumably will 
require payment under a policy with limits of three million dollars. Unlike its 
choice in Cutaia, the Court’s choice today is 
to inject itself into a contractual relationship between two sophisticated 
parties, insert language into the policy, and change the policy so it in effect 
provides:
 
The 
Directors or Officers shall, as a condition precedent to their rights under this 
Policy, give the Insurer notice, in writing, as soon as practicable of any Claim 
first made against the Directors and Officers during the Policy Period, or 
Discovery Period, (if applicable), but in no event later than ninety (90) days 
after the expiration of the Policy Period or Discovery Period, and shall give 
the Insurer such information and cooperation as it may reasonably require. 
Notwithstanding the foregoing provision, the insureds shall not lose any rights under the policy if 
written notice of a covered claim is given not later than ninety (90) days after 
the expiration of the Policy Period or Discovery Period, (if applicable), unless 
the insurer proves it was prejudiced by the failure to give notice as soon as 
practicable.
 
See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. 
Co., 174 F.3d 653, 657 (5th Cir. 1999).
            
The language effectively added by the Court looks remarkably similar to 
language in notice-prejudice statutes, regulations, and agency orders. 
See State Board of Insurance, Revision of Texas Standard Provision 
For General Liability Policies--Amendatory 
Endorsement-Notice, Order No. 23080 (Mar. 13, 1973); Mass. Gen. Laws ch. 175, § 112 (1988); 
Md. Code Ann. 
of 1957 art. 48A, § 482 (1991 Repl. Vol.). But in matters such as this the Court 
cannot enact legislation or issue agency orders, and it should limit itself to 
interpreting or construing agreements—not changing them.
            
The better choice for courts, as the Court noted in Cutaia, is if changes to insurance policy language 
are to be mandated that affect timing and amount of insurers’ actual or incurred 
loss provisions, other parts of the insurance companies’ business, and policy 
clauses related to rate or premium calculations, the changes should be left to 
the Legislature and regulatory agencies. See, e.g., J. 
David Cummins, Statistical and Financial Models of Insurance Pricing and the 
Insurance Firm, 52 J. of Risk and 
Ins. 261 (1991). The Legislature and regulatory bodies such as the 
Texas Department of Insurance have the time, staff, resources and expertise to 
investigate and bring all relevant information to bear on such issues. I adhere 
to the opinion expressed by the dissent in PAJ:
 
I would 
reaffirm Cutaia’s recognition that the 
Legislature and the state agency overseeing the insurance industry are better 
suited to decide whether an insurer must show prejudice to deny coverage based 
on late notice. TDI and legislators are free to supplant Cutaia’s no-prejudice rule with a more liberal 
notice-prejudice rule if they believe, on public policy grounds, that the latter 
is preferable.
 
PAJ, 243 S.W.3d at 641 (Willett, J., dissenting).
            
I would hold that on this record there is no evidence the condition 
precedent language requiring written notice of claim to AESIC “as soon as 
practicable” was not essential to AESIC’s policy 
having been issued. I would affirm the judgment of the court of appeals as to 
that issue. I would affirm the remainder of the court of appeals’ judgment for 
the reasons stated in the court of appeals’ opinion.
 
            
            
            
            
            
            
________________________________________
            
            
            
            
            
            
Phil Johnson
            
            
            
            
            
            
Justice
 
OPINION DELIVERED: March 
27, 2009






[1] 
Texas does 
have a State Board of Insurance Order relating to bodily injury or property 
damage liability claims covered by general liability policies. See PAJ, 
243 S.W.3d at 632; State Board of Insurance, Revision of Texas Standard 
Provision For General Liability Policies--Amendatory Endorsement-Notice, 
Order No. 23080 (Mar. 13, 1973) (“As respects bodily injury liability coverage 
and property damage liability coverage, unless the company is prejudiced by the 
insured's failure to comply with the requirement, any provision of this policy 
requiring the insured to give notice of action, occurrence or loss, or requiring 
the insured to forward demands, notices, summons or other legal process, shall 
not bar liability under this policy.”).