570 So.2d 498 (1990)
JEFFERSON GUARANTY BANK
v.
WESTBANK-MARRERO CAB CO.
No. 90-CA-406.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Rehearing Denied December 17, 1990.
Writ Denied February 22, 1991.
Peggy Wallace, New Orleans, for plaintiff-appellee.
*499 Philip A. Gattuso, Gretna, for defendants-appellants.
L. Marlene Quarles, New Orleans, James H. Morgan, III, Baton Rouge, Raymon G. Jones, Ronald A. Welcker, New Orleans, for defendant-appellee.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
This appeal comes to us as a result of a decision granting a motion for summary judgment.

FACTS
Jefferson Guaranty Bank filed suit on a promissory note signed by Westbank-Marrero Cab Company and endorsed by its sole stockholder, Frank J. Bommarito.
The purpose of the loan to Westbank and Bommarito was to obtain insurance premium financing which was to be secured by the procurement of an insurance policy covering taxicabs belonging to Westbank. The insurance was to be obtained through an insurance broker, Louisiana Taxicabs Associates, Inc. and/or Bacino and Associates, Inc., acting through its representative, Lucas Bacino.
The bank disbursed the funds to Bacino, he failed to acquire the liability insurance, thereby fraudulently depriving Westbank of the liability policy.
When the bank sued Westbank and Bommarito, they third-partied Louisiana Taxicab Association, Inc., Bacino and Associates, Inc. and Lucas Bacino. After discovery, it was learned that Bacino was insured by Employers Reinsurance Corporation (ERC), who was named as a third-party defendant. ERC issued a claims-made errors and omissions policy to Bacino and Associates, Inc., covering the period from June 25, 1986 through June 25, 1988. Louisiana Taxicab Associates, Inc. was named as an additional insured under the policy by special endorsement dated June 25, 1986.
ERC filed two motions for summary judgment in response to the third-party demand. The first motion was filed and supported by a certified copy of the policy of professional liability insurance issued to Bacino and Associates which revealed that Bacino had coverage for errors and omissions from June 25, 1986, through June 25, 1988. Upon hearing the original motion, the trial court decided that in order to properly support the motion for summary judgment, ERC had to submit evidence that it had not been given notice during the policy period of any event or development which could result in a claim against Bacino.
As a result, ERC filed a second motion for summary judgment and attached was an affidavit by an officer of ERC stating that no notice had been given by the insured, or anyone else, prior to termination of the policy on June 25, 1988, of any potential claims against Bacino. No affidavits, deposition testimony, or other evidence was presented by Westbank in opposition to the second motion for summary judgment. The trial court found there was no genuine issue as to the fact that no claim was made nor any notice given to ERC of any potential claim, event or development prior to the termination of the policy.
From the decision of the trial court granting ERC's motion for summary judgment, Westbank has appealed, presenting the following issues for our review:
1. Is the policy of ERC ambiguous since the provisions in its definitions portion requires notice during the policy period whereas under the notice provisions of its policy it only requires notice when, in the judgment of the insured, a claim might result, and should this ambiguity be held against the insurer, precluding summary judgment.
2. Is the notice provision of the claims-made policy unenforceable since no prejudice was shown by the failure to give notice during the policy period?
3. Even though claims-made policies are sometimes permissible, is the failure to give notice by the insured in this case, nevertheless enforceable to defeat coverage where it is extremely unlikely that the *500 insured will give notice of his criminal activity to the insurer and thereby more expeditiously (than if he had not given notice) lead to his arrest and incarceration?
Westbank argues that the provisions of the claims-made and reported policy should not be enforced on grounds of ambiguity. The policy provisions Westbank attacks involve the ensuing provisions of the policy which appear by virtue of endorsement # 05, effective June 25, 1987, appearing in Section I of the policy which reads as follows:
1. SECTION I, COVERAGE, is amended to read in its entirety as follows:
SECTION I
COVERAGE. The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by:
(a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, or
(b) any claim for libel or slander or invasion of privacy against the Insured,
arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public and any advertising activities, as respects claims first made against the Insured during the policy period.
Further, in Section V of the policy, the term "claims first made" is defined as follows:
(c) the term "claims first made" shall mean that the Insured has received notice of legal process, that a demand for money or services has been made against the Insured, or that the Insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured. In the event of any such proceeding, event or development, notice must be given to the Corporation during the policy period;
On page 3 of the policy, Section X, reads in pertinent part as follows:
NOTICE. The Insured shall give prompt notice to the Corporation of:
(a) any claim made and of any action or suit commenced against the Insured, and
(b) any proceeding, event, or development which in the judgment of the Insured might result in a claim against the Insured;
and shall forward promptly to the Corporation copies of such pleadings and reports as may be requested by the Corporation.
The policy was effective June 25, 1986, for a one year initial term and was renewed for one additional year by virtue of endorsement # 08. However, the policy terminated effective 12:01 a.m. on June 26, 1988, for non-renewal.
No claim was made against Bacino before June 26, 1988. The record reveals that the original third-party petition asserting a claim against the agency was not filed until October 20, 1988. The amending third-party petition naming ERC as the insurer of Bacino was not filed until June 22, 1989. The uncontroverted facts set out in the affidavit of Mr. Len Schapker, officer of ERC, establish that no notice from the insured, or anyone else, relative to any potential claim was ever received by ERC prior to the termination of the policy on June 26, 1988.
We do not agree with the contention that an insurer show actual prejudice to enforce the claims made provisions of a professional liability insurance policy. In Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973), Our Supreme Court stated:
"Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such *501 limitation of liability is not per se impermissible."
Other cases in Louisiana have upheld claims made policy provision limiting coverage to acts discovered and reported during the policy term. See: Dement v. International Paper Company, 363 So.2d 952 (La. App. 3rd Cir.1978), involving a claim under an insurance agent's professional liability errors and omissions policy; Poirier v. National Union Fire Insurance Company, 517 So.2d 225 (La.App. 1st Cir.1987), involving a lawyer's professional liability policy; Breaux v. St. Paul Fire and Marine Insurance Company, 326 So.2d 891 (La.App. 3rd Cir.1976), interpreting an architect's malpractice policy; and McFarland v. Sauvinet, 525 So.2d 686 (La.App. 1st Cir.1988), a real estate agent's professional liability insurance policy.
Finally, Westbank argues that a requirement that the insured notify the insurer of an event, proceeding or development that could lead to a claim during the policy period is an unreasonable condition, the fulfillment of which would result in a violation of the insured's constitutional rights or precludes the insurer from ever having to respond to a claim for dishonest, fraudulent or malicious acts of an insured.
Westbank argues that the only person who could have possibly reported the potential claim was Bacino, the wrongdoer, thus incriminating himself.
However, the coverage requirements of the term "claims first made" do not require the insured (Bacino) to admit any criminal wrongdoing in reporting a potential claim. The insured is required to report that someone may allege that he has committed a crime or wrong. Telling someone that you have been accused is not the same as confessing your guilt. This assignment lacks merit.
For these reasons the decision of the trial court granting ERC's motion for summary judgment is affirmed.
AFFIRMED.
GAUDIN, J., dissenting with written reason.
GAUDIN, Judge, dissenting.
I respectfully dissent, being of the opinion that summary judgment was inappropriate.