**THE ROUSE COMPANY, et al.**

v.

**FEDERAL INSURANCE COMPANY.**

Civil No. Y–96–3335.

United States District Court,
D. Maryland.

Jan. 14, 1998.

Jay I. Morstein, Kathleen A. Ellis, Baltimore, MD, for Plaintiffs.

E. Charles Dann, Jr., Stephen E. Marshall, Baltimore, MD, for Defendant.

*MEMORANDUM OPINION*

JOSEPH H. YOUNG, Senior District Judge.

I.

The Rouse Company and Rouse–New Orleans, Inc., a subsidiary of The Rouse Company (collectively, "Rouse") bring this diversity action against Federal Insurance Company ("Federal") seeking a declaratory judgment that Rouse was covered under an executive and corporate liability insurance policy issued by Federal for losses suffered from a multi-million dollar verdict against

Rouse in Louisiana state court. Rouse concomitantly contends that Federal breached the insurance contract by refusing to pay under the policy. The case is now before the Court on cross-motions for summary judgment.

The evidence before the Court establishes the following undisputed facts. Rouse purchased executive and corporate liability insurance from Federal in 1989 and renewed the policy without change in its substantive provisions for the period of May 13, 1990 through May 13, 1991 by endorsement originating from New Jersey, where Federal is located. The policy was negotiated, paid for, and delivered in Maryland.

In November 1990, Robert P. Guastella Equities, Inc., not a party to this litigation, sued Rouse, New Orleans Riverwalk Associates, New Orleans Riverwalk Limited Partnership, Connecticut General Life Insurance Company, and the World Trade Center of New Orleans, Inc. in the Civil District Court for the Parish of New Orleans, Louisiana. Guastella alleged wrongful acts of Rouse which undisputedly fell within the policy's coverage. In 1993, a Louisiana jury returned a verdict in favor of the plaintiff, and judgment was entered against The Rouse Company and New Orleans Riverwalk Associates, and against New Orleans Riverwalk Associates and Connecticut General Life Insurance Company for their 50% share each of $9,530,400, plus interest and costs. The Louisiana Court also entered judgment against The Rouse Company of New Orleans, Inc. "to the same extent as New Orleans Riverwalk Associates."

In November 1993, after the trial, Plaintiffs first notified Federal of a claim based on the Louisiana litigation. Federal denied coverage by letter dated February 23, 1994 for Rouse's failure to provide written notice of the claim as required by Policy Section 4.1. Federal also maintained it was not liable for the costs of defending the suit because Federal's consent was not first obtained, as required by Policy Paragraph 6.1. Although Rouse subsequently informed Federal of later developments in the case, and invited Federal to discuss post-trial settlement negotiations, Federal maintained coverage did not exist and that its consent was irrelevant. Ultimately, the suit settled for $4,750,000. Rouse estimates that its legal fees and costs exceed $1,400,000.

Plaintiffs argue that its policy with Federal covers the Louisiana claim because Federal has failed to demonstrate that lack of notice resulted in actual prejudice. Plaintiffs assert that Maryland law applies because the policy was delivered and the premiums paid in Maryland, or because New Jersey, where the policy was allegedly countersigned, would apply Maryland law. Federal contends that Louisiana law governs the question of notice as a condition precedent to coverage and that Maryland or New Jersey would apply Louisiana law. Federal concurrently argues that under Louisiana law, Plaintiffs' failure to provide notice bars coverage.

## II.

### A.

 Initially, the Court must determine what law applies under Maryland's choice of law rules, which this Court must follow when exercising diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The absence of a forum selection clause in the policy requires the Court to follow Maryland's general rule of *lex loci contractus* by looking to the law of the place where the contract was made to determine its meaning and operation. *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 570, 659 A.2d 1295 (1995). Under the *lex loci* principle, a contract is "made" where the last act necessary for its formation is performed. *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 66, 215 A.2d 467 (1965). In the context of insurance contracts, the "last act" necessary to form the contract is usually the delivery of the policy and the payment of premiums, which undisputedly occurred in Maryland. *E.g., Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. 71, 77, 552 A.2d 908 (1989) (citing *Sun Ins. Office v. Mallick*, 160 Md. 71, 81, 153 A. 35 (1931)). However, if the insurance contract requires the countersignature of a representative of the insurance company to render the contract effective, the

countersignature is the last act needed to form the contract. *E.g., Eastern Stainless Corp. v. American Protection Ins. Co.*, 829 F.Supp. 797, 799 (D.Md.1993).

■ The first page of the policy between Federal and Rouse states that the policy "shall not be valid unless also signed by a duly authorized representative of the Company." The signatures of Federal's vice-president and assistant secretary appear below this declaration. Accordingly, the policy requires a countersignature to become effective, and the jurisdiction where the countersignature is made is the *lex loci contractus* under Maryland law. Unlike *Eastern Stainless*, however, this first page contains no indication as to where Federal signed it, and the parties proffer no admissible evidence concerning the location of the countersigning.

### B.

■ Even assuming that Federal countersigned the policy in New Jersey, where Federal maintains its principal place of business, the Court may apply Maryland law under Maryland's limited rule of *renvoi*, which permits a Maryland court to disregard the rule of *lex loci contractus* and apply Maryland law, if: (1) Maryland has a substantial relationship to the contractual issue presented, and; (2) the foreign jurisdiction whose law of contract interpretation would ordinarily apply under Maryland's *lex loci* principle would, under the foreign jurisdiction's own choice of laws principles, apply Maryland law. *ARTRA, supra*, 338 Md. at 574, 579, 659 A.2d 1295. Maryland possesses a substantial relationship to this insurance policy because The Rouse Company, the parent company of all persons and entities protected under the policy, is a Maryland corporation, and because the policy was delivered and the premiums paid in Maryland. The remaining question is whether New Jersey would apply Maryland substantive law of contract interpretation under its choice of law rules.

New Jersey applies the RESTATEMENT (SECOND) OF CONFLICT OF LAWS in resolving choice of law issues. When an insurance contract is at issue, New Jersey courts look first to § 193 of the Restatement [1] which requires application of the law of the state that "the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties ...." *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 629 A.2d 885, 889, 893 (1993). The fact that the parties regarded Maryland as the principal place of the insured risk is indicated by the inclusion of The Rouse Company's Maryland address in the insurance contract. Further, the delivery of the policy, and the payment of premiums, in Maryland indicate the parties' understanding that Maryland was the principal location of the insured risk. Under § 193, a New Jersey court should find that Maryland law controls. Federal urges, however, that New Jersey would, and that this Court must, apply Louisiana law. Federal asserts that Comment f to § 193, which concerns multiple risk policies, mandates the application of Louisiana law under New Jersey conflicts of law principles because the lawsuit giving rise to the claim under the policy occurred in Louisiana, giving it the greatest interest in the insurance policy.

Comment f concerns the problems encountered when an insurance policy insures multiple risks located in different states which by statute require specific forms of insuring clauses. In such a case, the single policy insuring multiple risks will usually incorporate the statutorily-mandated forms of the states involved, and the courts will, presumably, treat the policy as involving separate policies, each insuring an individual risk. The example provided in Comment f is a fire insurance policy in states X, Y, and Z, which require special statutory forms of fire insurance. In this circumstance, when the policy contains multiple insuring clauses to comply with each state's statutes, the Restatement suggests that if a fire occurs in state X, the court should apply the law of state X in

---

1. Although the literal text of § 193 speaks to contracts of fire, surety, or casualty insurance, Comment a to that section indicates that § 193 includes liability insurance in its purview. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. a.

determining the rights and obligations under the policy.

■ It is beyond question that the instant policy was intended to cover risks in multiple jurisdictions. Items 6 and 7 of the policy's first page state that the employees, directors, and officers of Rouse and all its subsidiaries are covered. Further, Section 2.3 of the policy states that the coverage extends to claims made anywhere in the world. However, Defendants' argument that New Jersey would apply Louisiana law is erroneous. The language of Comment f indicates that it only applies in the limited situation where states statutorily require special forms of insuring clauses for certain kinds of insurance, and multiple clauses are incorporated in a multiple-risk policy. *Continental Ins. Co. v. Beecham, Inc.*, 836 F.Supp. 1027, 1036 (D.N.J. 1993); *United Brass Works, Inc. v. American Guarantee & Liab. Ins. Co.*, 819 F.Supp. 465, 469–70 n. 3 (W.D.Pa.1992); *but see Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F.Supp. 261, 264 (W.D.Mo.1994) (interpreting Comment f to require treatment of multiple risk policy as multiple insurance policies governed by law of place where specific risk located); *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F.Supp. 1237, 1240 (D.Nev.1994) (same).

A dearth of case law exists on the interpretation of Comment f, and New Jersey courts have not addressed the issue. However, based on the foregoing analysis, the Court reasonably believes that New Jersey would find Comment f inapplicable in this situation because its literal language does not extend to facts of this case. *See Sherby v. Weather Bros. Transfer Co.*, 421 F.2d 1243, 1244 (4th Cir.1970).

### C.

■ Under New Jersey law, when the subject matter of the insurance is an operation or activity which is predictably multistate, § 193's emphasis on the principal location of the risk is diminished and the governing law will be that of the state with the dominant relationship in accordance with §§ 6 and 188 of the Restatement. *Gilbert Spruance, supra*, 629 A.2d at 893; *see also NL Industries, Inc. v. Commercial Union Ins. Cos.*, 926 F.Supp. 1213 (D.N.J. 1996). Section 188 of the Restatement governs choice of law issues for contractual cases in general, and specifically refers to § 6. *Gilbert Spruance, supra*, 629 A.2d at 888. Accordingly, the Court may consider the place of contracting, the place of contract negotiation, the place of performance, the location of the contract's subject matter, the residence of the parties, the parties' intentions, the needs of interstate systems, the policies of the forum, the policies of other concerned states and their relative interest, the policies of law at issue, uniformity of result, and ease of determination and application of the law. *Id.*

Assuming *arguendo* that a New Jersey court would apply §§ 6 and 188 to this case due to the dispersed nature of the insured risk, the Court holds that New Jersey would apply Maryland law. Although the parties are silent regarding their intentions when they entered into the insurance contract, the contract was negotiated in Maryland, the premiums were paid in Maryland, the Rouse parent corporation is domiciled in Maryland, and Rouse's Maryland address is the only address listed on the agreement as that of the insured. Further, the relevant Maryland, New Jersey, and Louisiana laws are similar and the basic policies underlying the relevant law are similar:[2] Under these circumstances, the Court reasonably believes that New Jersey would apply Maryland law.

■ In sum, the Court holds that, under Maryland's limited *renvoi* doctrine recognized in *ARTRA*, the Court may disregard the principle of *lex loci contractus*, assuming *arguendo* that New Jersey law would apply under *lex loci* as the place of countersignature of the disputed policy, because New Jersey would apply Maryland law. Accord-

---

2. Although the similarity of these states' laws and policies can be seen to render the choice of law problem largely illusory, Maryland's lone recognition of a "false conflicts" principal appears in its limited adoption of the *renvoi* doctrine in *ARTRA, supra*. The Court is bound to follow Maryland choice of law principles as the forum state, making the above analysis required under Maryland law.

ingly, the Court will apply Maryland law to resolve the relevant issues.[3]

## III.

Having determined that Maryland law applies, the Court must consider whether Rouse's failure to report the existence of a claim to Federal until 1993 deprives it of coverage under the disputed policy. Rouse contends Federal cannot rely on a lack of notice defense absent proof of "actual prejudice." MD. CODE ANN., INS. II § 19–110 (Repl.Vol.1997) (formerly MD. ANN. CODE art. 48A, § 482). Federal responds that it has suffered actual prejudice.

### A.

Initially, the Court must ascertain what type of coverage the disputed insurance contract afforded Rouse. Under Maryland law, the "actual prejudice" requirement of § 19–110 does not apply to a "claims made plus reporting" policy—that is, a policy which requires that a claim be made against the insured, and reported to the insurer, within the effective dates of the policy. *T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 416, 628 A.2d 223 (1993) (holding that actual prejudice requirement of § 19–110 did not apply in "claims made plus reporting" policy where claim was not made and reported within the policy's effective period); *see also Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395 (1985); *Jefferson Guar. Bank v. Westbank–Marrero Cab Co.*, 570 So.2d 498 (La.Ct.App.1990) (citing *Livingston Parish Sch. Bd. v. Fireman's Fund American Ins. Co.*, 282 So.2d 478 (La.1973)). If, however, the policy is a "claims made" policy, requiring only that a claim be made against the insured during the policy period to afford coverage, § 19–110 does apply. *St. Paul Fire & Marine Ins. Co. v. House*, 315 Md. 328, 341, 554 A.2d 404 (1989).

It is axiomatic that an insurance contract is interpreted like any other contract. *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 224, 695 A.2d 566 (1997); *Smith v. Metropolitan Life Ins. Co.*, 29 N.J.Super. 478, 102 A.2d 797, 799 (App.Div.1954); *Lewis v. Hamilton*, 652 So.2d 1327, 1329 (La.1995). If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said and will not resort to extrinsic evidence to ascertain the contract's meaning. *Travelers Ins. Co. v. Benton*, 278 Md. 542, 545, 365 A.2d 1000 (1976); *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 582 A.2d 1257, 1260 (1990); *Lewis, supra*, 652 So.2d at 1329. If the contract is ambiguous, the jury must determine the contract's meaning. *Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 375, 378 A.2d 1346 (1977); *Michaels v. Brookchester, Inc.*, 26 N.J. 379, 140 A.2d 199, 203 (1958); *Carter v. BRMAP*, 591 So.2d 1184, 1188 (La.Ct.App. 1991). Ambiguity exists if a reasonable person could find the disputed contract provision susceptible of more than one meaning. State, *Department of Economic & Community Devel. v. Attman/Glazer P.B. Co.*, 323 Md. 592, 605, 594 A.2d 138 (1991); *McCarthy v. Berman*, 668 So.2d 721, 726 (La.1996); *cf. Nunn v. Franklin Mut. Ins. Co.*, 274 N.J.Super. 543, 644 A.2d 1111, 1113–14 (App.Div. 1994) (ambiguity will be found in an insurance contract where reasonable insured cannot discern the boundaries of coverage).

Here, the contractual language of the policy is ambiguous as to whether the Rouse–Federal policy is a "claims made" or a "claims made plus reporting" policy. While Section 4.1 of the policy states that "[t]he insureds shall, as a condition precedent to exercising their rights under this policy, give to [Federal] written notice as soon as practicable of any claim made against them...," the cover page of the agreement states that "THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY

---

**3.** The renewal of the Rouse–Federal policy in 1990 does not affect the Court's analysis. Although Maryland has not addressed the issue, it is generally held that absent significant change from the original policy, renewal of an insurance policy does not create a new and independent contract; accordingly, the governing law remains that governing the original policy. *Williams v. Mutual of Omaha*, 297 F.2d 876 (4th Cir.1962); *National Farmers Union Property & Cas. Co. v. Gibbons*, 338 F.Supp. 430 (D.N.D. 1972); *Miller v. Mutual Benefit Health & Accident Ass'n*, 76 N.M. 455, 415 P.2d 841 (1966); *see generally* 3 A.L.R.3d 646 § 5, at 655–56.

CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD." Thus, Section 4.1 states that the policy is a "claims made plus reporting" policy, while the cover page states that the policy is a "claims made" policy. A reasonable person could interpret the contract as requiring the claim be made *and* notice be given for coverage to attach, or as requiring simply the making of a claim with a concomitant covenant of notice. Because these provisions are in direct conflict as to the type of policy contemplated by the parties, the Court cannot determine whether reporting was, in fact, required.

■ It is well-settled in Maryland that when a genuine ambiguity exists in a contract, it will be resolved against the drafter of the contract under the principle of *contra proferentum. House, supra,* 315 Md. at 341, 554 A.2d 404. Unlike the *House* case, however, the record does not indicate who drafted the instrument; indeed, the record suggests that the policy was negotiated and drafted as a joint effort between two sophisticated business entities. Thus, unlike *House,* the Court cannot hold that the instant policy must be interpreted as a true "claims made" policy within the meaning of § 19–110 under the doctrine of *contra proferentum.*

### B.

This analysis does not necessarily preclude the Court from granting summary judgment. As stated above, if the policy is a "claims made plus reporting" policy, § 19–110 does not apply and Federal would be entitled to judgment because Rouse's duty to notify is a condition precedent, rather than a mere covenant whose breach can justify a denial of coverage only on a showing of prejudice. If, however, Federal can show actual prejudice, it is entitled to judgment because assuming *arguendo* that the policy is a true "claims made" policy, Federal may prevail should it demonstrate actual prejudice under § 19–110.

■ In a true "claims made" policy, the insured's duty to notify the insurer of a claim's existence is a mere covenant requir-

ing the showing of actual prejudice under § 19–110. *Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.,* 347 Md. 32, 41–42, 698 A.2d 1078 (1997). The Maryland Court of Appeals recently reaffirmed that the "actual prejudice" standard of § 19–110 measures the materiality of the breach of the insured's covenant of notification. *Id.* at 42, 698 A.2d 1078. The insurer must establish actual prejudice by a preponderance of affirmative evidence. MD. CODE ANN., INS. II § 19–110 (1997).

Federal argues that Rouse's delay constitutes actual prejudice because it was deprived of the right to participate in the defense of the Louisiana lawsuit; could not adequately protect its financial interests; was unable to determine whether the claim should be defended; could not allocate defense costs between uninsured and insured entities; and could not participate in the settlement. Federal's arguments, however, are broad conclusory statements which do not demonstrate actual prejudice. Federal maintains that deprivation of these rights resulted in a material breach of the insurance contract, citing general principles of Maryland law concerning material breach. Federal overlooks the critical fact that in Maryland, material breach is measured by the yardstick of actual prejudice in disputes concerning an insured's failure to provide timely notice of a claim to the insurer, not by general principles of contract law. *Sherwood Brands, supra.* As the party asserting the affirmative defense of lack of notice, Federal bears the burden under § 19–110 of demonstrating that it is entitled to judgment. Federal's conclusory statements, without more, do not satisfy its burden of proof.

Further, Rouse correctly notes that Federal's own witnesses contradict Federal's position and that Rouse has brought forth evidence that Federal had no right to settle the claim or force Rouse to settle (Pl.'s Mot. Exh. 3, at 30–34). The plain language of § 6.1 does not afford Federal the right to select counsel or decide whether a claim should be defended. Further, Federal's witness stated that Federal would probably have approved Rouse's selection of its Louisiana counsel (Pl.'s Mot. Exh. 4, at 40–41).

Finally, Federal's claim that its financial interests were not adequately protected because the same counsel represented all defendants in the Louisiana litigation is without merit. Even assuming *arguendo* that the various defendants should have had separate counsel, Federal has not demonstrated how this fact impinges on its own interests, especially given Federal's inability to force a settlement of the claim, and a lack of evidence that Federal would have objected to the actual settlement of the case had it received timely notice.[4]

Federal is correct that the purpose of notice provisions in a "claims made" insurance policy is to ensure that the insurer receives adequate notice of a claim to protect its exposure. As the Maryland Court of Appeals has observed in the analogous area of the insurer's duty to defend, notice provisions permit the insurer to gather the necessary information to fulfill this duty. *Sherwood Brands, supra,* 347 Md. at 41, 698 A.2d 1078. Were general principles of material breach to apply in this case, Federal's arguments would have considerable force, for an insurer cannot reasonably be expected to consent to settlement or to defense costs without knowledge of the claim's factual basis. Nevertheless, the Maryland legislature has consciously decided to measure material breach in insurance disputes concerning notice provisions by the benchmark of actual prejudice. Because Federal has failed to meet its burden under § 19–110, it is not entitled to summary judgment.

## IV.

 The Court holds that Maryland law applies to this dispute, and that the policy at issue in this case is ambiguous as to whether it is a "claims made" or a "claims made plus reporting" policy. The jury must decide this issue, for its resolution will determine who is entitled to judgment. Specifically, if the jury determines that the policy is a "claims made plus reporting" policy, Federal is entitled to judgment. If the jury determines that the policy is a "claims made" policy subject to § 19–110, Rouse is entitled to judgment, and Federal must provide coverage under the policy, unless Federal proves actual prejudice at trial by a preponderance of the evidence. Should the jury determine that Rouse is entitled to coverage, it will be asked to assess damages based upon the evidence presented.

Based upon the foregoing analysis, the parties' cross-motions for summary judgment will be denied.

## ORDER

In accordance with the attached Memorandum, it is this 14th day of January, 1998, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiffs' Motion for Summary Judgment BE, and hereby IS, DENIED; and

2. That Defendant's Cross–Motion for Summary Judgment BE, and hereby IS, DENIED; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

4. The cases cited by Federal to support a finding of actual prejudice are inapposite in this case. *Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 482 A.2d 503 (1984), concerned actual prejudice where an insurer was under a contractual duty to defend. This duty does not apply in this case, and Federal did not need to mount a full defense of the claim. Further, the Court of Appeals abrogated *Washington* in *Sherwood Brands, supra.* In *Woodfin Equities Corp. v. Harford Mut. Ins. Co.,* 110 Md.App. 616, 678 A.2d 116 (1996), *aff'd in part, rev'd in part,* 344 Md. 399, 687 A.2d 652 (1997), the decisive factor in finding actual prejudice was the insured's post-trial right to control the case. As discussed above, Federal had no right to control the course of the case or the selection of counsel, and in any event, Federal has not pointed to specific evidence that it would not have consented to the ultimate settlement reached in the Louisiana litigation. Finally, the case of *General Accident Ins. Co. v. Scott,* 107 Md.App. 603, 669 A.2d 773, *cert. denied,* 342 Md. 115, 673 A.2d 707 (1996), is of no avail to Federal, for as in *General Accident,* Federal's "evidence" is conclusory and fails to identify any specific harms resulting from the deprivation of its right to consent to settlement or to approve defense costs. Federal instead relies on the very type of conclusory allegations prohibited by that case. Further aggravating Federal's mistaken approach are its concessions that it would have likely approved Rouse's counsel and that it had no right to control the case or the settlement.