**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COLUMBIA COMMUNICATIONS
CORPORATION, a Delaware
Corporation,
                    *Plaintiff-Appellee,*

            v.                                    No. 99-1761

ECHOSTAR SATELLITE CORPORATION, a
Colorado Corporation,
                    *Defendant-Appellant.*

COLUMBIA COMMUNICATIONS
CORPORATION, a Delaware
Corporation,
                    *Plaintiff-Appellant,*

            v.                                    No. 99-1835

ECHOSTAR SATELLITE CORPORATION, a
Colorado Corporation,
                    *Defendant-Appellee.*

COLUMBIA COMMUNICATIONS
CORPORATION, a Delaware
Corporation,
                    *Plaintiff-Appellee,*

            v.                                    No. 00-1626

ECHOSTAR SATELLITE CORPORATION, a
Colorado Corporation,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-96-2047-DKC)

Argued: April 3, 2000

Decided: January 25, 2001

Before WIDENER, Circuit Judge, Claude M. HILTON, Chief
United States District Judge for the Eastern District of Virginia,
sitting by designation, and David A. FABER, United States District
Judge for the Southern District of West Virginia, sitting by
designation.

_____

Affirmed by unpublished opinion. Chief Judge Hilton wrote the opinion, in which Judge Widener and Judge Faber joined.

_____

**COUNSEL**

**ARGUED:** Bradshaw Rost, TENENBAUM & SAAS, P.C.,
Bethesda, Maryland, for Appellant. Mark Douglas Colley, HOLLAND & KNIGHT, L.L.P., Washington, D.C., for Appellee. **ON
BRIEF:** T. Wade Welch, T. WADE WELCH & ASSOCIATES,
Houston, Texas, for Appellant. Melinda C. Burrows, Jennifer A.
Short, HOLLAND & KNIGHT, L.L.P., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

HILTON, Chief District Judge:

Both EchoStar Satellite Corporation ("EchoStar") (Docket No. 99-1761) and Columbia Communications Corporation ("Columbia") (Docket No. 99-1835) appeal various rulings of the district court which found EchoStar liable for breach of contract after a jury trial. Oral argument was heard by the Court on April 3, 2000.* After the appeal was filed and briefing began, EchoStar filed a motion in the district court pursuant to Fed. R. Civ. P. 60(b)(3) requesting a new trial based on alleged discovery misconduct by Columbia. The district court denied the motion on April 5, 2000, finding that the motion was untimely. EchoStar separately appealed that ruling (Docket No. 00-1626). On November 14, 2000, an order was entered consolidating the appeals and ruling that further oral argument was not necessary. The issues in the third appeal are virtually identical to the first two and involve the same set of facts; thus, consolidation was warranted. Columbia has also filed a motion for sanctions against EchoStar for filing what it characterizes as a frivolous appeal.

I.

The dispute in this case arose over a contract for the use of a satellite transponder to transmit television programs. EchoStar refused to pay Columbia for the use of Columbia's satellite technology claiming that the satellite it provided was not up to the standards in the contract.

The equipment involved was located on a satellite owned and operated by the United States through the National Aeronautics and Space Administration ("NASA"). The satellite is part of the Tracking and Data Relay Satellite System ("TDRSS") used in the space shuttle program. NASA awarded Columbia exclusive rights to operate and market the C-Band transponders, or commercial transmission modules,

---

*Because of an error in the calculation of time for oral argument, counsel for Columbia has filed a letter supplementing his oral argument. EchoStar's counsel filed a response. We have considered those submissions from counsel in lieu of having additional oral argument.

located aboard the TDRSS satellites. Columbia leases these transponders to third parties, sharing revenues with NASA.

The TDRSS satellite at issue here, the "TDRS-5," is positioned over the Pacific Ocean. It retransmits signals it receives to an area encompassing eastern Asia, the western United States, and the Pacific Ocean. For the last several years, Columbia has marketed and leased the transponder capacity aboard the TDRS-5 satellite to companies such as EchoStar.

EchoStar is in the business of distributing television programming through satellite transmissions. Columbia and EchoStar executed a Transponder Lease Agreement ("TLA") on December 28, 1995, whereby EchoStar leased the transponder for a 22-month term commencing March 1, 1996, in exchange for monthly payments of $66,666. The TLA permitted Columbia to terminate the lease upon EchoStar's non-payment. The TLA required Columbia to allow EchoStar to test the satellite prior to the commencement of the lease. EchoStar could terminate the lease prior to commencement if the test results were below the TLA performance standards. The TLA had a provision which required EchoStar to give Columbia notice and an opportunity to cure material performance problems. EchoStar could terminate the contract with five days written notice in the event of a "service failure" as measured by the minimum performance standards in the contract, provided Columbia was put on notice of the problem. EchoStar could also terminate in the event of a "material breach" provided it gave Columbia written notice and allowed Columbia thirty days to cure any problem. EchoStar neither invoked the termination provision nor notified Columbia of a "service failure" or "material breach."

As the second lease payment came due, EchoStar informed Columbia that the performance standards were "problematic." EchoStar thereafter refused to make any lease payments. Columbia then notified EchoStar that if past due charges were not paid by June 24, 1996, Columbia would terminate the lease. EchoStar neither paid nor responded, so Columbia terminated the lease.

Columbia filed this breach of contract action on July 2, 1996, against EchoStar in the United States District Court for the District of

Maryland, Southern Division. EchoStar filed a motion to dismiss, which the district court denied. On April 16, 1997, EchoStar filed a motion for judgment on the pleadings, seeking to strike Columbia's claim for attorneys' fees. EchoStar thereafter filed its amended answer and counterclaims on April 25, 1997. EchoStar's answer contended that the transponder leased by EchoStar from Columbia failed to perform in accordance with the minimum performance standards promised under the contract. EchoStar also counterclaimed that Columbia breached the contract and committed negligent and/or intentional misrepresentation.

In July 1997, EchoStar and Columbia filed cross motions for summary judgment. On January 29, 1998, the district court granted partial summary judgment for both parties. The district court struck Columbia's claim for attorneys' fees and narrowed the remaining liability issues to one fact-based question: whether Columbia was ready, willing and able to perform its part of the contract.

In April 1998, at the direction of the district court, the parties submitted additional memoranda of law on the issue of liquidated damages sought by Columbia. The district court resolved that issue on May 11, 1998, by denying liquidated damages to Columbia. The district court thereafter also denied EchoStar's pre-trial *Daubert* motion, which sought to exclude the testimony of Columbia's expert witness, Terry Berman.

The district court impaneled a jury on September 8, 1998. The trial lasted approximately four days. During the trial, EchoStar requested that the court dismiss Columbia's case or, in the alternative, impose sanctions due to two instances of alleged discovery misconduct. In addition, EchoStar moved the district court to reopen the presentation of evidence to admit documentary evidence previously undiscovered. The court denied all motions. The jury rendered its verdict in favor of Columbia on September 15, 1998.

EchoStar filed a motion for a new trial, arguing primarily that the verdict was not based on all the evidence, alleging discovery improprieties by Columbia. The motion was denied and EchoStar filed its appeal.

## II.

EchoStar appeals four rulings of the district court: (1) denying Echostar's motion for a new trial for alleged discovery misconduct; (2) permitting the testimony of Columbia's expert witness; (3) denying Echostar's renewed motion for judgment as a matter of law; and (4) failing to instruct the jury about contract ambiguities. We find no error in any of these rulings.

## A.

EchoStar's first argument on appeal is that Columbia committed discovery misconduct and that the district court should have granted a new trial as a result. The parties disagree about the procedural posture of EchoStar's motion for a new trial below. Although EchoStar's motion before the district court states that it was brought "pursuant to . . . Fed. R. Civ. P. 59," it nevertheless argues that we should review the district court's ruling as if it were a motion brought pursuant to Rule 60(b)(3), which permits relief from a final judgment because of "misconduct" by an opposing party. Under either Rule 59 or Rule 60(b)(3), the district court's decision is reviewed for "abuse of discretion." *See Atlas Food Systems and Services, Inc. v. Crane National Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (Rule 59 motion); *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994) (Rule 60(b)(3) motion). A Rule 59 motion will be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Systems*, 99 F.3d at 594. In contrast, a Rule 60(b)(3) motion will be granted if: (1) the moving party has a meritorious defense; (2) the misconduct is proved by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case. *See Schultz*, 24 F.3d at 630.

EchoStar's argument that its Rule 59 motion should really be treated as a Rule 60(b)(3) motion is without merit. When it filed its motion with the district court, it specifically stated that it was moving for a new trial pursuant to Rule 59. It also cited Rule 59 as the test to be applied by the district court which is as follows: "the Court should set aside a verdict if it finds that it is against the clear weight

of the evidence, is based on false evidence, or will result in a miscarriage of justice." *Id.* (citing *Zervitz v. Hollywood Pictures*, 995 F. Supp. 596, 598 (D. Md. 1996)). Essentially its argument is that the district court erred in applying the very rule it asked the court to apply. This cannot be error. A party cannot complain when a court entertains a motion it suggests. If EchoStar wanted the district court to consider relief under Rule 60(b)(3) then it should have made such a motion.

EchoStar relies on a decision of the Ninth Circuit, *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990), holding that a Rule 59 motion for a new trial based on discovery misconduct should be treated substantively like a Rule 60(b)(3) motion. In *Jones*, the court held, "The test to be applied when discovery misconduct is alleged in a Rule 59 motion must be borrowed from cases interpreting Rule 60(b)(3), just as the test applied to a Rule 59 motion alleging newly discovered evidence is borrowed from Rule 60(b)(2)." *Jones*, 921 F.2d at 878. We do not find this authority to be persuasive. There exists an analytical link between Rule 59 and Rule 60(b)(2) because of the plain language of Rule 60(b) itself:

> (b) On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . .
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial *under Rule 59(b)*;
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

Fed. R. Civ. P. 60(b) (emphasis added). Rule 60(b)(2) specifically mentions Rule 59 while Rule 60(b)(3) does not. The rule clearly envisions the same substantive test for a "newly discovered evidence" motion under Rule 60(b)(2) as for a motion brought under Rule 59 on the same ground. The difference lies only in the timing: a Rule 59

motion must be brought "no later than 10 days after entry of judgment," while a Rule 60(b)(2) motion must be brought within a "reasonable time" but no more than one year after the judgment, order, or proceeding was entered or taken, provided of course that due diligence can be shown.

While this appeal was pending, EchoStar filed a Rule 60(b)(3) motion before the district court making much the same arguments as in its briefings here. The district court denied the motion because it was untimely. EchoStar appealed that ruling to this Court. Judgment was entered by the district court on September 15, 1998. EchoStar's Rule 60 motion was not filed until December 20, 1999—some fifteen months after judgment was entered for Columbia. We conclude on that basis that EchoStar's motion was not timely filed and is thus barred by Rule 60(b). Rule 60(b) is clear: "The motion shall be made within a reasonable time . . . [and] not more than one year *after the judgment*, order, or proceeding was entered or taken" (emphasis added). Even if the motion was filed within the one-year time period, we agree with the district court that EchoStar's delay in filing the motion was unreasonable. The issues in this case were briefed and argued at length before and during trial. EchoStar's Rule 60(b)(3) motion was therefore merely cumulative.

In sum, EchoStar has two theories in which it tries to bootstrap its Rule 60(b)(3) arguments before this Court: (1) it claims that its Rule 59 motion (clearly labeled as such) was in actuality a disguised Rule 60(b)(3) motion; and (2) its appeal from the denial of its December, 1999, motion pursuant to Rule 60(b)(3). Having rejected both theories, we turn to the merits of EchoStar's Rule 59 motion.

A Rule 59 motion should be granted when: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Systems*, 99 F.3d at 594. EchoStar argues that Columbia's failure to turn over certain computer databases during discovery meets this very high standard.

At trial, the issue for the jury was whether Columbia was ready, willing and able to perform its part of the contract. EchoStar alleged

that Columbia's transponder was not, in laymen's terms, producing a strong enough signal to be of use. During discovery, EchoStar requested all relevant "link budget databases"—databases that tracked the transponder's signal strength at different locations on the Earth's surface. Columbia turned over to EchoStar at least two link budget databases that indicated the downlink signal strength in Manila of the TDRS-5 satellite. The first link budget indicated that the downlink strength of a signal transmitted from Denver to Manila via the TDRS-5 satellite was 22.2 decibel watts ("dBW"). The second link budget indicated that the downlink strength of a signal transmitted from Cheyenne to Manila via the TDRS-5 satellite was 20.0 dBW. Columbia asserted that this second number was a typographical error and that the strength of the TDRS-5 signal in Manila never dipped below 22.2 dBW.

Columbia produced no more databases. Columbia claims that it discovered in August 1998, shortly before trial, additional databases. Any other versions however, were not preserved for trial and were destroyed when Columbia networked its computers sometime in 1997 or 1998.

EchoStar claimed that it was prejudiced at trial because of the non-production of the additional Columbia databases in the following two ways. First, the reference to the possible existence of other databases corroborated Columbia's evidence that the 22.2 dBW figure was correct and that the 20.0 dBW figure was a mistake. Second, EchoStar claimed that it was prejudiced because it never had access to the other versions which may have reflected a value of 20.0 dBW or lower.

With that evidence before it, the trial court ruled that the various databases fell within the scope of EchoStar's document requests but that Columbia's failure to produce those databases did not justify a judgment for EchoStar or a new trial. The district court found no evidence that Columbia had intentionally destroyed other versions of the database and was not convinced that Columbia had acted in bad faith. The district court also found that the prejudice caused by Columbia's non-compliance did not warrant judgment for EchoStar or a new trial.

EchoStar speculates that there might have been additional databases that would have indicated additional occasions in which the sat-

ellite's signal strength was lower than normal. Such low readings—even if they did exist—would have been only marginally helpful to EchoStar. As the district court noted, EchoStar already had one document that listed the signal strength at 20.0 dBW, a figure that was allegedly below normal. Additional documents would only have been cumulative of the argument that the signal strength was low in the past.

EchoStar also contends that the district court erred in not ordering a new trial because Columbia failed to disclose city tables—documents which list several major cities, grouped together by region, with details about those locations' signal strengths—posted on its Internet website. In response to interrogatories, Columbia disclosed the existence of the website in June 1998 and a 26-page printout of the website. The city tables were not included in the 26-page printout. EchoStar claimed that it learned through its own investigation that the city tables contained a 20 dBW value for Manila and a 19 dBW value for Honolulu. The district court found that the exclusion of the city tables from the printout was "strategic" but not extreme enough to justify the sanctions which EchoStar sought.

The district court in its discretion found that a new trial was not warranted because EchoStar could have discovered the city tables earlier, and the website city tables would not have been admissible so they would not have changed the outcome of the trial. Further, the city tables were irrelevant because the TDRS-5 satellite's performance after March 1, 1996 was not at issue. The critical issue at trial was whether by March 1, 1996, the TDRS-5 satellite could provide the signal strength bargained for in the TLA.

B.

EchoStar also contends that the district court erred in allowing Columbia's expert witness, Terry Berman, to testify about the strength of the TDRS-5 signal in Manila as of March 1, 1996. A district court's decision to admit the testimony of an expert witness is reviewed for abuse of discretion. *See General Electric Co. v. Joiner*, 522 U.S. 136 (1997). The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact

to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, expert testimony is admissible if it: (1) concerns scientific, technical, or other specialized knowledge; (2) that knowledge will assist the trier of fact to understand or resolve a fact at issue; and (3) the witness is qualified as an expert based on knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Hardin v. Ski Venture*, 50 F.3d 1291 (4th Cir. 1995).

Mr. Berman's testimony clearly involved specialized knowledge (satellite design and testing) that was beyond the lay ken of the jury. Further, the district court properly found that his specialized knowledge would assist the jury because his opinion testimony spoke to the strength of satellite signal strength in general and of the TDRS-5, specifically. The district court found in its discretion that Mr. Berman was "quite qualified" to be an expert witness after considering his studies in electrical engineering and computer science and his twenty years of work experience in the satellite industry. He testified that he had measured satellite signal strength dozens of times. On these facts, we concur with the district court that Mr. Berman qualified as an expert witness.

EchoStar's arguments essentially boil down to the following: It disagrees with Mr. Berman's opinions. It is entitled to do so. It was also entitled to the opportunity to challenge the witness' opinions on cross-examination, through the introduction of an expert of its own if it so chose, and during closing argument. EchoStar's arguments were rejected by the jury and provide no basis on which this Court can find an abuse of discretion in the qualification of Mr. Berman as an expert witness or the admission of his testimony.

## C.

EchoStar also appeals the denial of its renewed motion for judgment as a matter of law. A motion for judgment as a matter of law is granted only when, without weighing the credibility of witnesses or the evidence, there can be only one reasonable conclusion as to the

proper judgment. *See Princess Cruises, Inc. v. General Electric Co.*, 143 F.3d 828, 831 (4th Cir. 1998). We review the district court's denial of EchoStar's motion *de novo*, *see In re Wildewood Litigation*, 52 F.3d 499, 502 (4th Cir. 1995), and consider the evidence in the light most favorable to the nonmovant to determine whether the evidence presented at trial was sufficient to allow a reasonable jury to render a verdict in the nonmovant's favor. *See Princess Cruises*, 143 F.3d at 831. EchoStar's argument, essentially, is that the district court erred in admitting the evidence Columbia offered to prove that the satellite had a sufficient signal strength and, hence, Columbia had no proof that it was ready, willing, and able to perform under the contract. Specifically, EchoStar argues that the district court improperly admitted the testimony of Columbia's expert witness, Terry Berman and improperly admitted evidence that Columbia had received no customer complaints during the relevant time period.

While a motion for judgment as a matter of law is reviewed *de novo*, a district court's rulings on the admissibility of certain evidence are reviewed for abuse of discretion. *See Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997). As was discussed *supra*, the district court did not abuse its discretion in admitting the expert testimony of Mr. Berman.

EchoStar argues that the district court should have excluded evidence regarding the absence of complaints by other users of the TDRS-5 satellite because it was hearsay and more prejudicial than probative. Testimony is inadmissible hearsay when it is a statement by an out-of-court declarant that is offered for the truth of the matter asserted which does not fit into one of the innumerable exemptions or exceptions to the rule. *See* Fed. R. Evid. 801(c). The issue here is whether a witness' testimony about the absence of customer complaints contains a "statement" for purposes of Rule 801. Rule 801(a) provides that a "statement" is either: (1) an oral or written assertion; or (2) nonverbal conduct of a person that is intended to be an assertion. A company's failure to make a complaint is clearly not an oral or written assertion. It cannot fall under the second prong because its silence was not intended to communicate anything at all. In fact, it is not even affirmative "conduct" in the sense that the companies did not do anything. It is the non-existence of their conduct that is offered into evidence. The evidence is thus not a "statement" and not hearsay.

The district court also properly found that the evidence was not overly prejudicial. The district court noted that evidence of the absence of prior accidents or complaints is fairly common in cases where one of the parties has alleged that a product was defective. *See, e.g.*, *Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 9 (1st Cir. 1994). Further, the district court found that Columbia laid the proper foundation by offering testimony that other customers such as MCI, Sprint, Globecom and Associated Press Television also leased capacity on the TDRS-5 satellite.

### D.

EchoStar also takes issue with the district court's refusal to instruct the jury that all ambiguities in the TLA should have been resolved against Columbia since Columbia was the principal drafter of the agreement. We review challenges to jury instructions for abuse of discretion. *See Nelson v. Green Ford, Inc.*, 788 F.2d 205 (4th Cir. 1986).

The district court did not abuse its discretion when it denied EchoStar's request. The requested jury instruction is given only when one of the parties did not participate in the drafting of the contract or one of the parties is unsophisticated. *See Rouse Co. v. Federal Ins. Co.*, 991 F. Supp. 460, 466 (D. Md. 1998); *St. Paul Fire and Marine Ins. Co. v. House*, 554 A.2d 404, 410 (Md. 1989). Here, EchoStar is neither. The evidence before the district court was that both parties had equal knowledge and sophistication about the subject involved and both negotiated the contract. Unlike many insurance contracts or other one-sided agreements, both parties in this case went into contract negotiations as equals. Accordingly, EchoStar was entitled to no special instruction.

### III.

Columbia raises two issues on cross-appeal: (1) the district court's refusal to apply Article 2A of the Maryland Uniform Commercial Code ("MUCC"); and (2) the method of interest calculation. Columbia has also moved for sanctions against EchoStar.

### A.

The district court held that Article 2A of the MUCC—which governs leases—did not apply to this case. We review the district court's

interpretation of the parties' contract *de novo. See Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir. 1995).

Article 2A "applies to any transaction, regardless of form, that creates a lease." Md. Code Ann., Com. Law I § 2A-102. The question before the Court is whether the parties' contract was a lease. Columbia argues that the TLA is a lease. The district court, however, found that the TLA was like a license and was not a lease of the transponder itself.

Columbia argues that the transponder it offered to EchoStar is movable, identifiable, able to be touched, held and contained, and is therefore a good which can be leased. However, the transponder which was to be used by EchoStar was neither identifiable nor movable at the time of contracting because Columbia reserved the right to move EchoStar between transponders. The contract itself refers to "services" which would indicate that EchoStar was not contracting for the right to use a particular transponder, but the right to use a certain amount of transponder bandwith, the specifics of which were variable under the contract. Also, unlike a "good" under ordinary circumstances which would actually exist in the physical sense, the transponder alone was not what the parties bargained for. EchoStar needed a certain bandwidth to use, not the actual, physical satellite. According to the TLA, Columbia could change which transponder and frequency on the satellite was available for EchoStar's use. Therefore, the contract provisions demonstrate that EchoStar did not obtain the right to exclusively occupy a particular transponder, which would be the central feature of a lease for transponder use. Although the contract is labeled as a "lease," it is the substance of the contract that matters, not its label.

Once the district court determined that the MUCC does not apply, it properly denied Columbia's motion for summary judgment on that ground. The district court also properly held that the liquidated damages clause did not apply once it was determined that the MUCC was inapplicable.

### B.

Columbia's last challenge on cross-appeal relates to the calculation of interest for the late payments. The TLA contained a clause which

permitted Columbia to charge 1.5% per month for late payments but only if the charges are undisputed. The district court correctly held that the charges in question were in dispute—hence this litigation—and therefore were not subject to the late payment clause of the TLA.

Columbia also argues for compound instead of simple interest. Maryland, not federal, common law applies. Under Maryland law the rate of prejudgment interest is simple, not compound. *See* Md. Code Ann., Com. Law I § 12-102; *see also United Cable Television of Baltimore Ltd. Partnership v. Burch*, 732 A.2d 887, 892 (Md. 1999) (rate of prejudgment interest applied to breach of contract damages under Maryland law is 6% simple).

## C.

Columbia has also filed a motion, pursuant to Fed. R. App. P. 38, for sanctions against EchoStar. Rule 38 provides, "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." This Court has previously imposed sanctions in cases where a party appeals for the sole purpose of gaining a tactical advantage in other litigation, *see, e.g.*, *Dyntel Corp. v. Ebner*, 120 F.3d 488 (4th Cir. 1997), where the appeal or litigation is really a recast of previous litigation, *see, e.g.*, *In re Lane*, 991 F.2d 105 (4th Cir. 1993), where an attorney misleads the Court regarding the record, *see, e.g.*, *Holcomb v. Colony Bay Coal Co.*, 852 F.2d 792 (4th Cir. 1988), or where a prisoner files a lawsuit or appeal for the sole purpose of tying up the work of the courts rather than litigating a meritorious claim under the laws of the United States, *see, e.g.*, *Vestal v. Clinton*, 106 F.3d 553 (4th Cir. 1997) (sanctions imposed when sole basis for prisoner's appeal was that the President of the United States and Governor of North Carolina had broken the "laws of God"); *In re Vincent*, 105 F.3d 943 (4th Cir. 1997) (sanctions imposed for a prisoner's filing of a repetitive petition for a writ of mandamus); *Brock v. Angelone*, 105 F.3d 952 (4th Cir. 1997) (sanctions imposed for a prisoner's filing of a lawsuit under 42 U.S.C. § 1983 over the ingredients in pancake syrup). Although we have rejected EchoStar's arguments, its appeal does not meet the very demanding standard of frivolousness. Accordingly, we deny Columbia's motion for sanctions.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*